522 So.2d 57 (1988)
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellant/Cross-Appellee,
v.
Lawrence V. CAFFIERO, Manuel G. Koutsourais, As Personal Representative of the Estate of George Koutsourais, Deceased, a Minor, for the Use and Benefit of Said Estate, and for Manuel G. Koutsourais and Mary D. Koutsourais, Surviving Parents, Appellees/Cross-Appellants.
No. 86-2389.
District Court of Appeal of Florida, Second District.
February 12, 1988.
Rehearing Denied March 22, 1988.
Jeffrey P. Winkler of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., St. Petersburg, for appellant/cross-appellee.
Daniel J. Newman, P.A., Tampa, for appellee/cross-appellant Caffiero.
PER CURIAM.
This action arose out of a single vehicle accident in which the passenger (Larry Caffiero) was injured and the driver (George Koutsourais) was killed. The vehicle was owned by Caffiero. The accident occurred in the early morning hours (between 3:30 and 4:00 a.m.) of June 9, 1983. The vehicle they occupied was traveling north on U.S. 19 (State Road 55) in Pinellas County. An eyewitness driving in the same direction testified the vehicle was traveling at a high rate of speed  in fact, he testified Caffiero's vehicle was still gaining on him after he had accelerated to 100 m.p.h. in an attempt to avoid the Caffiero vehicle. After nearly touching the back bumper of the eyewitness' vehicle, the Caffiero vehicle inexplicably veered to the right, left the road, sheared off a traffic sign and a road delineator and struck a culvert headwall. Due to the injuries and trauma suffered by Caffiero during the collision, Caffiero was unable to recall the events of that evening and therefore was unable to testify concerning the accident.
Caffiero sued the State of Florida, Department of Transportation (DOT), claiming the DOT had created a known dangerous condition when it temporarily widened U.S. 19 without moving the culvert headwall *58 at the same time.[1] The estate of Koutsourais sued the DOT for wrongful death, claiming the same negligence on the part of DOT. The cases were consolidated. The second amended complaints alleged a lack of sufficient roadside recovery area, failure to provide guardrails or warning markers and failure to mitre the headwall to make it traversable.
DOT answered and asserted eight affirmative defenses, including comparative negligence, sovereign immunity and the seat belt defense.
After the presentation of evidence, the DOT moved for a directed verdict based on sovereign immunity, which was never ruled upon on the record. The jury returned verdicts in favor of appellees, reduced by half due to the negligence of Caffiero, then reduced by half again based upon the DOT's seat belt defense. The trial court further reduced Caffiero's recovery by the dollar amount that Caffiero had settled a claim against Koutsourais' estate.
The DOT brought this appeal, arguing that the claim should have been barred by the doctrine of sovereign immunity. Caffiero filed a cross-appeal arguing that the seat belt defense should have been disposed of by his motion for directed verdict, and that the trial court erred in ordering the setoff.
Based upon our understanding of the current state of the doctrine of sovereign immunity in the state of Florida, we reverse. Rather than give a through overview of the evolution of the mutating creature most commonly known as "the waiver of sovereign immunity for tort liability," we focus on one appendage of the organism: sovereign immunity as it relates to road building.
In 1982, the Supreme Court of Florida held that "the failure to install traffic control devices and the failure to upgrade an existing road or intersection, as well as the decision to build a road or roads with a particular alignment, are judgmental, planning-level functions and absolute immunity attaches." Department of Transportation v. Neilson, 419 So.2d 1071, 1073 (Fla. 1982). The court went on to say that if the injury arises from a defect in the overall plan itself, then "[the defect] is not actionable unless a known dangerous condition is established." Id. at 1078. The court likened this type of defect to the creation of a curve in a road. The curve itself is not a defect, but if the entity knows that vehicles cannot negotiate the curve over a certain speed, an operational level duty arises to warn of such danger. Failure to warn is actionable. Id.
In a companion case, the supreme court held that "when a governmental entity creates a known dangerous condition, which is not readily apparent to persons who would be injured by the condition, a duty at the operational-level arises to warn the public of, or protect the public from, the known danger." City of St. Petersburg v. Collom, 419 So.2d 1082, 1083 (Fla. 1982) (emphasis in original).
The DOT argues several alternative grounds for reversal. We need focus on only one: that the danger of driving off the road is readily apparent to persons using the highway. The "readily apparent" language in Collom has been discussed in only a few decisions. Two of those decisions have similar facts and dispositions. The danger a pedestrian faces in crossing a street is "readily apparent," therefore, sovereign immunity bars a tort action against the governmental entity. Payne v. Broward County, 461 So.2d 63, 66 (Fla. 1984); Paneque v. Metropolitan Dade County, 478 So.2d 414, 415 (Fla. 3d DCA 1985). One court has held that the dangers of a trash dumpster are "readily apparent," barring suit against a city. City of Delray Beach v. Watts, 461 So.2d 142 (Fla. 4th DCA 1984). The fourth district has also affirmed the entry of a summary final judgment in favor of the DOT when a pedestrian was killed by a vehicle on a bridge with an unprotected walkway. Masters v. Wright, 508 So.2d 1299 (Fla. 4th DCA 1987). The court quoted, with approval, *59 the trial court's determination that "the danger of pedestrians being struck by a motor vehicle on the ... [b]ridge is readily apparent... ." Id. at 1300.
Finally, the third district has held that the DOT's decision to not replace a low clearance warning sign on a bridge was not actionable because "the low clearance of the bridge was readily apparent to persons who could be injured by it." Barrera v. State Department of Transportation, 470 So.2d 750 (Fla. 3d DCA 1985).
Based upon the evidence presented at trial and the case law discussed above, we hold that the dangers of leaving a straight six-lane road at a high rate of speed are readily apparent to the general public. The doctrine of sovereign immunity shields the DOT from liability under the facts of this case. The trial court erred in not granting DOT's motion for directed verdict.
We reverse the final judgments in favor of appellees and remand for entry of a final judgment in favor of appellant based upon the foregoing analysis. Due to our disposition in this case, we do not reach the points raised in appellees' cross-appeal.
Reversed and remanded.
RYDER, A.C.J., and CAMPBELL and FRANK, JJ., concur.
NOTES
[1] The testimony at trial indicated the temporary widening was part of a twenty-year project to improve U.S. 19. The total project included moving the culvert headwall farther away from the road.