630 So.2d 1160 (1993)
DEPARTMENT OF TRANSPORTATION, Appellant,
v.
Nathan M. STEVENS, as personal representative of the Estate of Gary W. Stevens, Deceased, Appellee.
DEPARTMENT OF TRANSPORTATION, APPELLANT,
v.
Doris M. SMITH, as personal representative of the estate of David Keith Smith, deceased, Appellee.
Nos. 92-02090, 92-02094.
District Court of Appeal of Florida, Second District.
December 17, 1993.
Rehearing Denied February 9, 1994.
Thornton J. Williams, Gen. Counsel, and Thomas F. Capshew, Asst. Gen. Counsel, Tallahassee, for appellant.
*1161 Arnold R. Ginsberg, Perse, P.A. & Ginsberg, P.A., and Ratiner & Glinn, P.A., Miami, for appellees.
HAWORTH, LEE E., Associate Judge.
The Department of Transportation (D.O.T.) appeals from an adverse jury verdict awarding damages in a wrongful death suit brought by the personal representatives of the estates of Gary Stevens and David Smith. The decedents' claims were filed separately but consolidated for trial and appeal purposes.
The accident which resulted in the death of Stevens and Smith occurred February 12, 1989, at about 3:30 a.m. on the overpass of Interstate 4 where it bridges State Road 39 north of Plant City. The two men were returning from a night of drinking in Orlando and had fallen asleep in a pickup truck being driven by their friend, Hugh Sloat, who was sober and the designated driver.
Sloat fell asleep at the wheel as he approached the Interstate overpass traversing State Road 39. The truck, which was travelling westbound at about 54 m.p.h., first drifted left off the roadway, made contact with about 12 feet of guardrail, then veered to the right across two lanes of highway.
The vehicle hit the aluminum guardrail on the right going about 35 m.p.h., vaulted and knocked out 65 feet of the railing. At this point the driver was ejected onto the roadway, the truck tipped over the bridge and fell 35 feet to the embankment below, landing upside down. Both passengers, Stevens and Smith, were killed on impact.
The complaints alleged the state was engaged in operational activities for which sovereign immunity had been waived. Specifically, it was plaintiffs' position that the Department of Transportation had created a hidden trap for unwary motorists by having guardrails which permitted vaulting at the location where the accident occurred, and they alleged that D.O.T. failed to correct the situation or to warn travellers of the propensity of the railings to cause vaulting after the state agency had become aware of the condition. (Vaulting occurs when a vehicle strikes the guardrail and passes over or through it, rather than being deflected back onto the roadway.)
It was undisputed at trial and the jury specifically found that the portion of Interstate 4 involved in the accident was built in 1959 in accordance with prevailing construction standards, and that at the time of original construction D.O.T. was not aware the restraint system presented a dangerous condition. Further, the evidence was clear that the bridge and its guardrails had been maintained by the Department at all times prior to the accident according to its design as built.
Plaintiffs' experts indicated 8 of 27 accidents occurring on the bridge between January 1986 and February 1989 involved vehicles which vaulted after coming into contact with the bridge railing. Additionally, plaintiffs showed this condition of vaulting was discovered by D.O.T. after the bridge was built, that measured by safety criteria which have evolved since installation the railing at the time of the accident was substandard.
Plaintiffs also proved the state agency had ample opportunity to replace the traffic restraint system before the subject accident. The claimants' expert witnesses stated their opinion that this failure to replace was an omission or maintenance failure which placed motorists in danger and which fell below the standard of care the state owes the traveling public.
D.O.T. claims sovereign immunity arguing that it is not liable under the facts of this case because the danger was open and obvious and did not amount to a trap, as that term has developed in the context of tort cases against government entities. D.O.T. states its decision not to change the railing system on the approach to the overpass falls squarely within the protected discretionary, planning-level area, and that the trial court erred by not granting its motions for directed verdict and entering judgment in its favor. We agree and reverse.
In Department of Transp. v. Caffiero, 522 So.2d 57 (Fla. 2d DCA 1988) we held that the *1162 hazards of leaving a straight six-lane road at a high rate of speed are readily apparent to the general public. In that case, the operator lost control of his vehicle causing injury to himself and the death of a passenger when the car ran off the road into the headwall of a culvert. The claim in Caffiero was that D.O.T. had created a known dangerous condition when it temporarily widened the highway without moving the culvert headwall away from the lanes of travel.
However, after reviewing the holdings of the two leading Florida Supreme Court cases on the subject, Department of Transp. v. Neilson, 419 So.2d 1071 (Fla. 1982) and City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982), we stated the government's liability in such situations depends upon the alleged danger not being "readily apparent" to the persons who would be injured by the condition. Caffiero, 522 So.2d 57, at 58-59.
We conclude in the instant case, for the same reasons as stated in Caffiero, that the dangers of running off the road while asleep at the wheel are readily apparent, and such dangers include the potential for the unguided vehicle to collide with, penetrate, or vault bridge guardrails.
However, it is not just the conspicuous nature of the danger, but the degree of danger presented by the guardrails at the time of the accident which compels judgment in D.O.T.'s favor.
As a general proposition, the decision to build or change a road and all the determinations inherent in such a decision are of a judgmental, planning-level type for which the state is immune. Neilson, 419 So.2d at 1077. The government has no duty to upgrade highways from their original designs or to prevent obsolescence. Perez v. Department of Transp., 435 So.2d 830, 831 (Fla. 1983); Neilson, 419 So.2d at 1078. But as the court noted in Neilson:
This is not to say, however, that a governmental entity may not be liable for an engineering design defect not inherent in the overall plan for a project it has directed be built, or for an inherent defect which creates a known dangerous condition.
419 So.2d at 1077.
The principle is restated in Collom:
We find that a governmental entity may not create a known hazard or trap and then claim immunity from suit for injuries resulting from that hazard on the grounds that it arose from a judgmental, planning-level decision.
419 So.2d at 1086.
There has been an absence of clarity in the opinions concerning what circumstances constitute a dangerous condition or trap for purposes of imposing liability upon government entities. This has been due in part to the Neilson and Collom decisions using interchangeably such terms as "trap," "hazard," "known hazardous condition," and "dangerous condition."
In an effort to see through the semantic haze of case law on this point, Justice Kogan derived what he believed to be the court's true meaning in his specially concurring opinion in Department of Transp. v. Konney, 587 So.2d 1292, 1298-1300 (Fla. 1991). After reviewing what is described as the "loose usage of the English language" employed by the court in the two cases, he states only situations rising to the level of "a very serious peril" can support governmental liability under this theory. 587 So.2d at 1299. Justice Kogan concluded that Neilson and Collom were talking about "a known hazard so serious and so inconspicuous to a foreseeable plaintiff that it virtually constitutes a trap." Id. at 1299.
The hazard D.O.T. is accused of creating in the present case is not inconspicuous nor does it fall into the exceptional category of a "very serious peril." Here the driver, Mr. Sloat, hit a guardrail, not some object disguised as a guardrail, and not some object which ensnared him or deceived him into placing the vehicle and its passengers in danger. Perhaps the traffic restraint system did not function at the level of modern railings, but as a matter of law on impact its performance was not so deficient or its condition so derelict as to pose a very serious danger or hidden risk to large numbers of the traveling public, including people like *1163 decedents' driver who might fall asleep at the wheel, veer off the road and collide with it.
The law does not impose a duty on the state to provide guardrails meeting more recent design standards, nor does it mandate warnings[1] unless the existing model exposes persons to the significant type and degree of danger referred to by Justice Kogan in Konney. This is true even where it is shown at trial that motorists would be better protected by replacing existing substandard railing or safety systems with improved modern materials or designs.
Sovereign immunity has not been waived for every "dangerous condition" known to or created by the state and within its capacity to correct or warn. For example, in Neilson, the supreme court noted as long as the government maintained existing roads in accordance with their original design, state entities could not be liable for maintenance failures where failure to maintain was "used to indicate obsolescence and the need to upgrade... ." 419 So.2d 1071, at 1078.
Likewise, in Perez v. Department of Transp., 435 So.2d 830 (Fla. 1983), when it was clear D.O.T. maintained the bridge in accordance with its original design, the state was held immune from allegations that it had an obligation to replace and upgrade steel-grated portions of a bridge by installing safer metal studs.
A certain level of hazard is intrinsic and unavoidable in roadway construction and in the management of traffic flow. As observed in Konney, courts may accept the proposition that every intersection may be inherently dangerous without concluding that the judicial branch has the authority to expose the state to tort liability in every situation where an existing structure or obsolete design presents a potential hazard. 587 So.2d at 1295.
Because as a matter of law the danger here was conspicuous and not of the high degree required to impose operational-level duties upon D.O.T., the state in the present case is insulated from liability.
For the reasons expressed, we reverse and remand for entry of judgment in favor of the Department of Transportation.
FRANK, C.J., and CAMPBELL, J., concur.
NOTES
[1] It should be noted that warnings under the fact of this case would have been of little value, as decedents' driver was not conscious when he lost control of the vehicle prior to hitting the railing.