675 So.2d 615 (1996)
POLK COUNTY, Appellant,
v.
Donna M. SOFKA, Appellee.
No. 95-01886.
District Court of Appeal of Florida, Second District.
April 19, 1996.
Rehearing Denied June 14, 1996.
*616 Hank B. Campbell of Lane, Trohn, Clarke, Bertrand, Vreeland & Jacobsen, P.A., Lakeland, for Appellant.
John W. Frost, II, Neal L. O'Toole, and Mark A. Sessums of Frost, O'Toole & Saunders, P.A., Bartow, for Appellee.
BLUE, Judge.
Polk County appeals the final judgment entered in Donna Sofka's favor following a jury verdict. The County contends that it is entitled to sovereign immunity for the negligence that allegedly caused Sofka's extensive and serious injuries. We conclude that the County's liability resulted from an operational-level decision, the creation of a dangerous condition for which the County failed to warn, which is not entitled to sovereign immunity. Accordingly, we affirm but certify a question of great public importance.
Sofka suffered substantial injuries resulting from a two-car collision at an unmarked intersection in Polk County. The four-way intersection was created when a subdivision road was built directly opposite a private road. Sofka entered the intersection from the private road without first stopping or slowing down. While crossing the intersection, Sofka's car was struck by a car traveling on the intersecting road. Sofka concedes that the car on the intersecting road had the right-of-way.
Sofka sought damages against Polk County on the theory that the County created a dangerous intersection when it accepted the subdivision road but failed to warn of the dangerous condition. Sofka supported her theory with evidence that the opening of the new road, combined with area vegetation and the topography, made the primary road difficult to see. Sofka contended that the County's failure to install a stop sign, a yield sign, or any other warning on the road on which she was traveling was the proximate cause of the accident.
Polk County contends that whether traffic control devices should be installed is a judgmental or planning-level decision that is immune from liability. Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla.1979) (governmental agencies have sovereign immunity for planning-level decisions). In particular, Polk County relies on Department of Transportation v. Neilson, 419 So.2d 1071 (Fla.1982), and Department of Transportation v. Konney, 587 So.2d 1292 (Fla.1991). We agree that these cases are dispositive but disagree with the County's application of these cases to the facts before us.
Neilson is the leading case on governmental liability and sovereign immunity for alleged negligence arising from intersection collisions. Neilson appears to stand for two rules that in our factual situation are difficult to distinguish. "[T]he failure to install traffic control devices and the failure to upgrade an existing road or intersection, as well as the decision to build a road or roads with a particular alignment, are judgmental, planning-level functions to which absolute immunity attaches." Neilson, 419 So.2d at 1073.
*617 A governmental entity may be liable, however, for an inherent defect that creates a known dangerous condition if it fails to warn of the known danger. This is a negligent omission at the operational level. 419 So.2d at 1078.
The following example from Neilson is particularly pertinent to the facts of this case:
Illustrations of inherent defects include... the construction of a curved road where a straight road would be more appropriate. Such decisions as the location and alignment of roads ... and the placing of traffic control devices are not actionable because the defects are inherent in the overall project itself. The fact that a road is built with a sharp curve is not in itself a design defect which created governmental liability. If, however, the governmental entity knows when it creates a curve that vehicles cannot safely negotiate the curve at speeds of more than twenty-five miles per hour, such entity must take steps to warn the public of the danger.
419 So.2d at 1078. The fact situation presented here falls within the second situation. Sofka presented evidence that Polk County created a known dangerous condition (the four-way intersection) and failed to provide any warning.[1] Under Neilson, this is a negligent omission at the operational level and, therefore, not immune.
Neilson contains a significant factual detail, which is also present in Konney. In Neilson, the plaintiff alleged a failure to provide sufficient warning based on the failure to upgrade or to install adequate traffic control devices. In Konney, the plaintiff alleged that the Department was negligent because it failed to install a flashing beacon, it failed to install rumble strips, and the location and type of signs present were improper. In reversing a jury verdict against the Department for a death resulting from a collision at this rural intersection, the Florida Supreme Court stated:
The issue in the instant case is whether the installation of a flashing beacon at the intersection ... was a planning-level decision required to upgrade the intersection because of increased traffic or a necessary device due to a known dangerous condition at the time this intersection was created, i.e., an operational-level decision. In the first instance, sovereign immunity would prohibit recovery under the principles of Neilson and its progeny, while in the second instance recovery would be allowed under Collom.[2]
587 So.2d at 1294-95 (footnote added). The court found that there were adequate signs at the intersection.
In the case before us, the complaint alleged and the evidence proved a complete failure to warn. The importance of this factual distinction is confirmed by Department of Transportation v. Webb, 438 So.2d 780 (Fla.1983). There, the Florida Supreme Court approved a First District decision that affirmed a jury verdict against the Department for its failure to install warning signs at a railroad crossing. The supreme court affirmed the portion of the district court's opinion stating that the failure to place warning signs at the crossing, which was known to be dangerous, was an operational-level function.
Both Neilson and Konney have a factual similarity to this case because each involved an allegedly dangerous intersection. However, it is a critical distinction that Neilson and Konney involve claims of inadequate traffic control devices, whereas the case before us alleges the complete absence of warning. The language in both cases supporting Polk County's position does not require a reversal. We conclude that the failure to erect any warnings at the subject intersection constituted a failure to warn of a dangerous condition, an operational-level decision for which sovereign immunity is inapplicable.
*618 Just as the dangerous curve example in Neilson required a warning, the jury here was entitled to find from the evidence that Polk County had a duty to warn of the dangerous intersection and failed to do so. As in Neilson, there is no liability for the design of a dangerous curve or intersection, but the failure to warn of the dangerous trap may result, as it did here, in the loss of the sovereign immunity which attached to the planning or design. We see no distinction between a dangerous curve and the creation of a dangerous intersection; each carries with it the duty to warn.
Because there is language in Neilson that could suggest a governmental decision on whether to install a traffic control device is always a planning-level decision, we certify the following to the Florida Supreme Court as a question of great public importance:
ALTHOUGH A GOVERNMENTAL AGENCY'S DECISION WHETHER TO INSTALL A TRAFFIC CONTROL DEVICE IS NORMALLY A PLANNING-LEVEL DECISION, PROTECTED BY SOVEREIGN IMMUNITY, MAY THAT IMMUNITY BE LOST IF GOVERNMENTAL ACTION CREATES A DANGEROUS CONDITION RESULTING IN A DUTY TO WARN AND THE FAILURE TO INSTALL ANY WARNING RESULTS IN A BREACH OF DUTY?
As to Polk County's remaining issue, the record contains sufficient evidence to support the jury's determination that the conduct by Polk County was the proximate cause of the accident.
Affirmed; question certified.
FULMER, J., concurs specially.
PARKER, Acting C.J., dissents with opinion.
FULMER, Judge, concurring.
I agree with Judge Blue's attempt to discern the meaning and proper application of the various rules pertaining to sovereign immunity. Therefore, I concur with the majority opinion. I also agree that the issues raised by this case should be addressed as a question of great public importance. However, I would certify the question as posed by Judge Parker. The law of sovereign immunity seems to have become a morass of rules that, upon case by case application, has developed internal inconsistency instead of clarity.
PARKER, Acting Chief Judge, dissenting.
I respectfully dissent. While I agree that a question should be certified to the supreme court, I would certify the following question:
IF A COUNTY HAS LEGAL NOTICE OF AN INTERSECTION BETWEEN TWO PAVED SECONDARY ROADS AND EITHER FAILS TO MAKE ANY PLANNING-LEVEL DECISION REGARDING APPROPRIATE TRAFFIC CONTROL OR DECIDES NOT TO PLACE ANY TRAFFIC CONTROL DEVICES AT THE INTERSECTION, CAN THE SUBSEQUENT ABSENCE OF A STOP OR YIELD SIGN AT THAT INTERSECTION CONSTITUTE EITHER AN OPERATIONAL-LEVEL ERROR OR THE CREATION OF A KNOWN DANGEROUS CONDITION?
Having read and reread all of the supreme court decisions discussing the planning-level versus operational-level decisions, I conclude that Justice Sundberg's comment in his dissent in Department of Transportation v. Neilson, 419 So.2d 1071, 1079 (Fla.1982) (Sundberg, J., dissenting), that "[t]he enigma is now shrouded in mystery" still applies. Regardless of the many attempts by the courts of this state to clarify the law dealing with the waiver of sovereign immunity, it remains a confusing area of the law which is difficult to apply to the various factual situations presented in litigation against a governmental entity.
Lamp Post Lane, running east and west, is a dead-end, privately-maintained, two-lane road approximately one-half mile long and is located on the east side of Old Polk City Road (SR 33). It was paved in 1987. Until 1988 it connected in a "T" intersection with SR 33, a county-maintained, paved two-lane road running north and south. There were no traffic control devices installed at that intersection.
*619 In 1988 a new subdivision was platted and constructed on the west side of SR 33, at which time West Lamp Post Lane was constructed. West Lamp Post Lane is slightly offset from Lamp Post Lane. Exhibits offered at trial reflect that the westbound lane of Lamp Post Lane lines up with the eastbound lane of West Lamp Post Lane. There is a rise in Lamp Post Lane as one approaches SR 33. Polk County was aware of the newly platted subdivision and the dedication of West Lamp Post Lane as a county road. Even after West Lamp Post Lane was constructed, no traffic control devices were installed at the intersection. I have found no evidence in the record indicating that the county was aware of prior accidents at that intersection.
Donna Sofka turned off onto Lamp Post Lane and stopped to visit a residence five houses from the intersection. She had been on this road twice, once at dusk and once at 10:00 p.m., both on the day of the accident. Departing after dark, she drove west on Lamp Post Lane and entered the intersection without slowing. A vehicle traveling southbound on SR 33 struck her vehicle.
At the time of the accident, a tree and bushes were located on the northwest corner of the intersection. Sofka's expert testified that this contributed to an inability for westbound drivers to see approaching southbound traffic on SR 33. Sofka's complaint alleged that the county created an inherently and unreasonably dangerous condition by failing to install a traffic signal or stop sign at this intersection.
The decisions concerning the installation of appropriate traffic control devices or methods generally are planning-level functions for which the government is immune. Neilson, 419 So.2d at 1073. In Department of Transportation v. Konney, 587 So.2d 1292, 1294 (Fla.1991), the supreme court stated:
[W]e have consistently held that decisions concerning the initial plan, road alignment, traffic control device installation, or the improvement of roads and intersections are not matters which would subject a governmental entity to liability, because these activities are basic capital improvements and are judgmental, planning-level functions.
In Neilson, we held that "decisions relating to the installation of appropriate traffic control methods and devices or the establishment of speed limits are discretionary decisions which implement the entity's police power and are judgmental, planning-level functions."
The supreme court also stated:
Although we accept the proposition that every intersection may be inherently dangerous, we reject the conclusion reached by the district court that these circumstances give the judicial branch the authority to determine the type of traffic control devices utilized at intersections.... This Court and the district courts of appeal have established the principle that traffic control methods and the failure to upgrade intersections with traffic control devices are judgmental, planning-level decisions, which are not actionable.
Konney, 587 So.2d at 1295.
The Neilson court recognized that there are two exceptions when a government may not be immune from liability for such decisions. The first exception is when the government's decision is implemented in a way that it creates or maintains an unintended defect. Neilson, 419 So.2d at 1077-78. This first exception is not relevant here.
The second exception is when the government creates a known dangerous condition and fails to warn. Neilson, 419 So.2d at 1078. In Department of Transportation v. Stevens, 630 So.2d 1160, 1162-63 (Fla. 2d DCA 1993), review denied, 640 So.2d 1108 (Fla.1994), this court stated:
There has been an absence of clarity in the opinions concerning what circumstances constitute a dangerous condition or trap for purposes of imposing liability upon government entities. This has been due in part to the Neilson and [City of St. Petersburg v.] Collom [419 So.2d 1082 (Fla. 1982)] decisions using interchangeably such terms as "trap," "hazard," "known hazardous condition," and "dangerous condition."
In an effort to see through the semantic haze of case law on this point, Justice Kogan derived what he believed to be the court's true meaning in his specially concurring *620 opinion in Department of Transportation v. Konney, 587 So.2d 1292, 1298-1300 (Fla.1991). After reviewing what is described as the "loose usage of the English language" employed by the court in the two cases, he states only situations rising to the level of "a very serious peril" can support governmental liability under this theory. 587 So.2d at 1299. Justice Kogan concluded that Neilson and Collom were talking about "a known hazard so serious and so inconspicuous to a foreseeable plaintiff that it virtually constitutes a trap." Id. at 1299.
....
A certain level of hazard is intrinsic and unavoidable in roadway construction and in the management of traffic flow. As observed in Konney, courts may accept the proposition that every intersection may be inherently dangerous without concluding that the judicial branch has the authority to expose the state to tort liability in every situation where an existing structure or obsolete design presents a potential hazard. 587 So.2d at 1295.
I conclude, as a matter of law, as this court did in Stevens, that the dangerous condition here was not so inconspicuous and so serious as to fit within the second exception. Accordingly, I would hold that Polk County should be immune from liability.
NOTES
[1] We acknowledge that the question of whether the condition was known to be dangerous was close. However, the jury clearly resolved this issue in the plaintiff's favor.
[2] City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla.1982) (governmental entity may not create a known hazard or trap and then claim immunity from suit for injuries resulting from that hazard on the ground that it arose from a judgmental, planning-level decision).