623 So.2d 1182 (1993)
Marie G. FABRE, et vir, Petitioners,
v.
Ann MARIN, Respondent.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner,
v.
Ann MARIN, Respondent.
Nos. 79869, 79870.
Supreme Court of Florida.
August 26, 1993.
*1183 Mare R. Ginsberg of Mandina & Ginsberg, and James K. Clark of Barnett, Clark and Barnard, Miami, for petitioners.
Neal A. Roth of Grossman & Roth, and Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for respondent.
Marguerite H. Davis of Katz, Kutter, Haigler, Alderman, Davis, Marks & Rutledge, P.A., Tallahassee, amicus curiae for American Ins. Ass'n.
Robert A. Butterworth, Atty. Gen. and Cecilia Bradley, Asst. Atty. Gen., Tallahassee, amicus curiae for the State of Florida, Dept. of Ins., Div. of Risk Management.
Bonita L. Kneeland of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, amicus curiae for the Florida Ass'n for Ins. Review.
Roy D. Wasson, Miami, amicus curiae for Dade County Trial Lawyers Ass'n.
Barbara W. Green, Coconut Grove, and Karen J. Haas, Miami, amicus curiae for Academy of Florida Trial Lawyers.
GRIMES, Justice.
We review Fabre v. Marin, 597 So.2d 883 (Fla. 3d DCA 1992), based upon its certified conflict with Messmer v. Teacher's Insurance Co., 588 So.2d 610 (Fla. 5th DCA 1991), review denied, 598 So.2d 77 (Fla. 1992). We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.
Ann Marin was injured in an accident while riding as a passenger in an automobile driven by her husband, Ramon Marin. Mrs. Marin sued Marie and Eddie Fabre, claiming that while driving her husband's automobile Mrs. Fabre had negligently changed lanes in front of the Marin vehicle, causing it to swerve into a guardrail. The Fabres denied responsibility and asserted that Mrs. Fabre had been parked on the expressway shoulder four to five minutes prior to the collision to change a flat tire. They contended that it was another automobile which had cut off the Marin vehicle. During discovery, Mrs. Marin learned that the Fabres' liability insurance for injuries to one person was limited to $10,000. Therefore, she amended her complaint to add her uninsured motorist carrier, State Farm, as an additional defendant.
At the jury charge conference, the trial judge denied the defendants' request that the verdict form be drafted so as to allow the jury to apportion blame for the accident between Mr. Marin and Mrs. Fabre. However, to obviate the necessity of a retrial if this ruling later proved to be erroneous, Mrs. Marin agreed to have the issue of Mr. Marin's negligence submitted to the jury subject to a posttrial determination of whether any affirmative finding on that issue would result in a reduction of Mrs. Marin's recovery. The jury returned a verdict finding both Mrs. Fabre and Mr. Marin 50% at fault. The jury awarded Mrs. Marin $12,750 in economic damages and $350,000 in noneconomic damages. The trial judge granted a $5,000 remittitur on Mrs. Marin's economic damages but refused to reduce her noneconomic damages. An amended judgment for Mrs. Marin was entered in the amount of $357,750.
On appeal, the issue was whether the liability for noneconomic damages should be apportioned to the Fabres on the basis of the percentage of fault attributed to them. Hence, the district court of appeal was called upon to interpret section 768.81(3), Florida Statutes (Supp. 1988), which states:
(3) APPORTIONMENT OF DAMAGES.  In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that *1184 party on the basis of the doctrine of joint and several liability.
The court employed the following reasoning to conclude that the statute was ambiguous:
The statute does not define the term "party." As used in subsection three, "party" may be interpreted as referring to: 1) persons involved in an accident; 2) defendants in a lawsuit; or 3) all litigants in the lawsuit. Despite appellants' urging to the contrary, we decline to apply the first interpretation: subsection three requires a court to enter judgment against liable parties; the court lacks jurisdiction to enter a judgment against nonparties, such as Ramon. The statute does not indicate what quantity or total the court should utilize to factor the "percentage of fault" for which judgment shall be entered, that is, whether to consider the fault attributable to all defendants, or to all participants in the accident. The resolution again depends on the definition assigned to the term "party."
Fabre v. Marin, 597 So.2d at 885. After pointing out that Mrs. Marin could not recover damages from her husband because of the doctrine of interspousal tort immunity, the court concluded that in discarding joint and several liability, the legislature did not intend to curtail a fault-free plaintiff's ability to recover the total of her damages. Rather, the legislature intended only to apportion liability among those tortfeasors who were defendants in the lawsuit. Hence, the court affirmed the full amount of the judgment.
In Messmer, the Fifth District Court of Appeal reached the opposite conclusion in applying section 768.81(3) to facts which for purposes of this appeal were the same as those in the instant case. The Messmer court adopted the rationale of the trial court's order, which read in pertinent part:
"Section 768.81(3) provides that the court shall enter judgment against `each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability.' The court is of the opinion that the language of the statute supports defendant's contention that a party's percentage of the total fault of all participants in the accident is the operative percentage to be considered. The use of the word `party' simply describes an entity against whom judgment is to be entered and is not intended as a word of limitation. Had the legislature intended the apportionment computation to be limited to the combined negligence of those who happened to be parties to the proceeding, it would have so stated. The plain meaning of the word percentage is a proportionate share of the whole, and this meaning should apply in the absence of any language altering or limiting the plain meaning. See Holly v. Auld, 450 So.2d 217 (Fla. 1984).
Even if the language of the statute were deemed to be ambiguous, this court would look to the legislative intent and purpose of the statute... . The obvious purpose of the statute was to partially abrogate the doctrine of joint and several liability by barring its application to non-economic damage. To exclude from the computation the fault of an entity that happens not to be a party to the particular proceeding would thwart this intent."
Messmer, 588 So.2d at 611-12. Thus, the court held that the defendant was responsible only for that portion of the noneconomic damages equivalent to the percentage of fault attributable to that defendant. In Dosdourian v. Carsten, 580 So.2d 869 (Fla. 4th DCA 1991), quashed on other grounds, 624 So.2d 241 (Fla. 1993), the Fourth District Court of Appeal adopted the Messmer interpretation of the statute.
The doctrines of contributory negligence and joint and several liability have been part of our common law for many years. See Smith v. Department of Ins., 507 So.2d 1080 (Fla. 1987). In the case of the former, even if the plaintiff's negligence was only partially responsible for the accident, there could be no recovery from defendants who may have been guilty of even greater negligence. Louisville & N.R.R. v. Yniestra, 21 Fla. 700 (1886). In the case of the latter, all negligent defendants were held responsible for the total of the plaintiff's damages regardless of the extent of each defendant's fault in causing the accident. Louisville & N.R.R. v. Allen, 67 Fla. 257, 65 So. 8 (1914).
*1185 In Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), this Court took the first step toward equating liability with fault. In receding from the doctrine of contributory negligence, this Court said:
If fault is to remain the test of liability, then the doctrine of comparative negligence which involves apportionment of the loss among those whose fault contributed to the occurrence is more consistent with liability based on a fault premise.
Id. at 436. Thereafter, in Lincenberg v. Issen, 318 So.2d 386, 391 (Fla. 1975), we abolished the rule against contribution among joint tortfeasors, stating that "it would be undesirable for this Court to retain a rule that under a system based on fault, casts the entire burden of a loss for which several may be responsible upon only one of those at fault... ." Subsequently, the doctrine of joint and several liability was severely tested in Walt Disney World Co. v. Wood, 515 So.2d 198 (Fla. 1987), a case in which the jury had returned a verdict finding the plaintiff 14% at fault, Walt Disney World 1% at fault, and the plaintiff's fiance who was not joined as a defendant 85% at fault. While recognizing the logic in Disney's position that it should not be responsible for 86% of the damages, we declined to judicially eliminate joint and several liability on the premise that this was a public policy matter which would be best decided by the legislature. The legislature acted upon the subject by enacting section 768.81(3).
We conclude that the statute is unambiguous. By its clear terms, judgment should be entered against each party liable on the basis of that party's percentage of fault. The Fabres' percentage of fault was 50%. To accept Mrs. Marin's position would require the entry of a judgment against the Fabres in excess of their percentage of fault and directly contrary to the wording of the statute. We reject the suggestion that the statute is ambiguous because it fails to define the "whole" by which a party's percentage of fault is to be determined. The "fault" which gives rise to the accident is the "whole" from which the fact-finder determines the party-defendant's percentage of liability. Clearly, the only means of determining a party's percentage of fault is to compare that party's percentage to all of the other entities who contributed to the accident, regardless of whether they have been or could have been joined as defendants.
Even if it could be said that the statute is ambiguous, we believe that the legislature intended that damages be apportioned among all participants to the accident. The abolition of joint and several liability has been advocated for many years because the doctrine has been perceived as unfairly requiring a defendant to pay more than his or her percentage of fault. Section 768.81 was enacted as part of the Tort Reform and Insurance Act of 1986, chapter 86-160, Laws of Florida, in which the legislature found "that there is in Florida a financial crisis in the liability insurance industry" and "that the current tort system has significantly contributed to the insurance availability and affordability crisis." Section 2 of the act provided in pertinent part:
The Legislature finds and declares that a solution to the current crisis in liability insurance has created an overpowering public necessity for a comprehensive combination of reforms to both the tort system and the insurance regulatory system. This act is a remedial measure and is intended to cure the current crisis and to prevent the recurrence of such a crisis.
This Court has already noted that the act disfavors joint and several liability to such a degree that it survives only in those limited situations where it is expressly retained. Conley v. Boyle Drug Co., 570 So.2d 275 (Fla. 1990). In passing on the constitutionality of the act, we observed that the right of access to courts "does not include the right to recover for injuries beyond those caused by the particular defendant." Smith, 507 So.2d at 1091. We are convinced that section 768.81 was enacted to replace joint and several liability with a system that requires each party to pay for noneconomic damages only in proportion to the percentage of fault by which that defendant contributed to the accident.
Accepting Mrs. Marin's position would mean that, depending on who was sued, a defendant could be required to pay a greater *1186 proportion of the damages than his or her proportion of fault in causing the accident. In essence, she contends that her husband's degree of negligence in the occurrence of the accident is irrelevant because he was not a defendant and that judgment should be entered against the Fabres for 100% of her damages. Not only does this result contradict the specific statutory language that "the court shall enter judgment against each party liable on the basis of such party's percentage of fault," but also it defies common sense. It would be incongruous that the legislature would have intended that the Fabres' responsibility be 100% in situations where Mrs. Marin's vehicle was operated by her husband and only 50% in situations where by chance she was a passenger in a vehicle operated by a friend.
The court below erroneously interpreted section 768.81 by concluding that the legislature would not have intended to preclude a fault-free plaintiff from recovering the total of her damages. Ever since this Court permitted contribution among joint tortfeasors, the main argument for retaining joint and several liability was that in the event one of the defendants is insolvent the plaintiff should be able to collect the entire amount of damages from a solvent defendant. By eliminating joint and several liability through the enactment of section 768.81(3), the legislature decided that for purposes of noneconomic damages a plaintiff should take each defendant as he or she finds them.[1] If a defendant is insolvent, the judgment of liability of another defendant is not increased. The statute requires the same result where a potential defendant is not or cannot be joined as a party to the lawsuit. Liability is to be determined on the basis of the percentage of fault of each participant to the accident and not on the basis of solvency or amenability to suit of other potential defendants. The fact that Mrs. Marin could not sue her husband[2] does not mean that he was not partially at fault in causing the accident.
We cannot accept Mrs. Marin's argument that our interpretation of the statute is illogical because it will result in conflicts with other statutes. We believe that any inconsistencies which may occur in given factual scenarios can be harmonized.[3] However, in the event they cannot, the legislature has already resolved the issue. Section 768.71(3), Florida Statutes (Supp. 1988) provides that if the provisions of sections 768.71-768.81 conflict with any other provisions of the Florida Statutes, such other provisions shall prevail.
Other states have interpreted similar statutes as we do. In DaFonte v. Up-Right, Inc., 2 Cal.4th 593, 7 Cal. Rptr.2d 238, 828 P.2d 140 (1992), the California Supreme Court reviewed a statute which provided that each defendant shall be liable only for the percentage of noneconomic damages which corresponded to that defendant's proportionate share of fault. The court unanimously concluded that the statute unambiguously required a determination of the percentage of fault of all entities who contributed to the *1187 accident rather than only those who had been joined as defendants. The court stated:
As noted, section 1431.2 itself contains no ambiguity which would permit resort to these extrinsic constructional aids. The statute plainly attacks the issue of joint liability for noneconomic tort damages root and branch. In every case, it limits the joint liability of every "defendant" to economic damages, and it shields every "defendant" from any share of noneconomic damages beyond that attributable to his or her own comparative fault. The statute contains no hint that a "defendant" escapes joint liability only for noneconomic damages attributable to fellow "defendants" while remaining jointly liable for noneconomic damage caused by others.
Id. 7 Cal. Rptr.2d at 243, 828 P.2d at 145.
In Brown v. Keill, 224 Kan. 195, 580 P.2d 867 (1978), the court interpreted its statute in a similar manner. The court noted:
There is nothing inherently fair about a defendant who is 10% at fault paying 100% of the loss, and there is no social policy that should compel defendants to pay more than their fair share of the loss. Plaintiffs now take the parties as they find them. If one of the parties at fault happens to be a spouse or a governmental agency and if by reason of some competing social policy the plaintiff cannot receive payment for his injuries from the spouse or agency, there is no compelling social policy which requires the codefendant to pay more than his fair share of the loss.
Id. 580 P.2d at 874.
Even without the benefit of a statute limiting joint and several liability, the court in Bartlett v. New Mexico Welding Supply, Inc., 98 N.M. 152, 646 P.2d 579 (N.M.Ct. App.), cert. denied, 98 N.M. 336, 648 P.2d 794 (1982), ruled that because New Mexico was a pure comparative negligence state, a defendant should not be held liable for the negligence of an unknown driver who contributed to an accident. The court stated:
We hold that defendant is not liable for the entire damage caused by defendant and the unknown driver. Defendant, as a concurrent tortfeasor, is not liable on a theory of joint and several liability.
Non-Party Concurrent Tortfeasor
Heft and Heft, Comparative Negligence Manual (1978), § 8.131, states:
It is accepted practice to include all tortfeasors in the apportionment question. This includes nonparties who may be unknown tortfeasors, phantom drivers, and persons alleged to be negligent but not liable in damages to the injured party such as in the third party cases arising in the workmen's compensation area.
Id. 646 P.2d at 586.
Other courts reaching similar conclusions include Nance v. Gulf Oil Corp., 817 F.2d 1176 (5th Cir.1987) (under Louisiana law, finder of fact must consider negligence of all persons involved in an incident  even immune nonparties to the suit  because an immune nonparty's negligence reduces a defendant's ultimate liability to the plaintiff); Johnson v. Niagara Mach. & Tool Works, 666 F.2d 1223 (8th Cir.1981) (under Minnesota law, a jury must consider an immune party's negligence even if that party is not a party to the suit); Connar v. West Shore Equip., 68 Wis.2d 42, 227 N.W.2d 660 (1975) (in apportioning negligence, the negligence of all parties must be considered whether or not they are parties to the lawsuit and whether or not they can be liable); and Paul v. N.L. Indus., Inc., 624 P.2d 68, 70 (Okla. 1980) ("To limit the jury to viewing the negligence of only one tortfeasor and then ask it to apportion that negligence to the overall wrong is to ask it to judge a forest by observing just one tree. It cannot, and more important should not, be done.").
Accordingly, Mrs. Marin's judgment should be reduced by 50% of her noneconomic damages. There should be no reduction in economic damages because under section 768.81(3), joint and several liability continues to apply when a defendant's negligence equals or exceeds that of the plaintiff. We approve the opinion in Messmer. We quash the decision below and remand for proceedings consistent with this opinion.
It is so ordered.
*1188 OVERTON, McDONALD, SHAW and HARDING, JJ., concur.
BARKETT, C.J., dissents with an opinion, in which KOGAN, J., concurs.
BARKETT, Chief Justice, dissenting.
The majority's conclusion is at odds with the very essence of tort law, which provides that in a suit between an innocent victim and a negligent party, the innocent victim should be made whole by receiving damages from a negligent party. Because the language of the statute does not compel the majority's conclusion in this case, I dissent.
The Legislature undeniably intended section 768.81(3), Florida Statutes (Supp. 1988), to apply to the typical situation where each potentially at-fault person or entity is joined as a party in an action, allowing the apportionment of damages among the at-fault parties in the suit. However, nowhere in the statutory language or in legislative history has the Legislature made clear its intent to apply the statute to nonparties in the unusual situation presented by these facts. To the contrary, the language in section 768.81(3) is susceptible of at least two equally plausible interpretations of legislative intent. Compare Fabre v. Marin, 597 So.2d 883 (Fla. 3d DCA 1992), with Messmer v. Teacher's Ins. Co., 588 So.2d 610 (Fla. 5th DCA 1991), review denied, 598 So.2d 77 (Fla. 1992).
The better interpretation is the one that most closely adheres to the goals of tort law and remains consistent with the other policies implemented by the Florida Legislature. The district court's interpretation in Fabre accomplishes this goal. Therefore, I would approve Fabre and disapprove Messmer.
KOGAN, J., concurs.
NOTES
[1] By retaining joint and several liability for cases in which the damages do not exceed $25,000 and for economic damages in which a defendant's percentage of fault exceeds that of the plaintiff, the legislature continued to recognize the justification for joint and several liability under some circumstances.
[2] If the accident had happened today, Mrs. Marin could sue her husband because the doctrine of interspousal immunity has now been abrogated. Waite v. Waite, 618 So.2d 1360 (Fla. 1993).
[3] Thus, we reject the argument that our interpretation of section 768.81(3) when coupled with the right to setoff under section 768.31(5) will lead to a double reduction in the amount of damages. This possibility may be avoided by applying the setoff contemplated by section 768.31(5) against the total damages (reduced by any comparative negligence of the plaintiff) rather than against the apportioned damages caused by a particular defendant. For example, suppose defendant A is released from the suit for a settlement of $60,000 and the case goes to trial against defendant B. The jury returns a verdict finding the plaintiff's comparative negligence to be 40%, the negligence of A and B to be 30% each, and the damages to be $300,000. Because the $60,000 setoff would not reduce the plaintiff's $180,000 to below $90,000, B would still have to pay the full $90,000 for his share of the liability. Of course, if the damages were found to be $150,000, the $60,000 from the settlement with A would be set off against the plaintiff's $90,000 recovery which would mean that B's obligation would be reduced from $45,000 to $30,000.