PER CURIAM.
Appellee sued based on injuries sustained when her husband’s 18 ft. boat encountered the wake generated by appellant’s 53 foot boat, the Reef Rover V. Appellee and her husband had been fishing in the Atlantic Ocean when they decided to retreat to Caesar’s Creek channel[1] because of bad weather. On the way in, the boat in which the appellee was riding passed the Reef Rover IV (a vessel similar to Reef Rover V) crossing its wake. Appellee, who was seated in the bow of her boat got wet, but was otherwise unhurt. As appellee’s boat entered the eastern approach to the creek, it encountered Reef Rover V, passing each other at a distance of about 30-40 feet. The channel at that point was approximately 363 feet wide. Appellee testified:
“My husband suggested that I should go to the back because its, you know, its going to happen like the other one. He suggested come back here. So I got up. The front part of my boat is not big enough for me to turn around or to do any type of movements. I didn’t want to lose sight of the boat. I came backwards.”
At trial, testimony was presented regarding the size of the wake generated by the Reef Rover V; and as to whether the captain of the Reef Rover V failed to keep a proper lookout and failed to maintain a safe speed. Appellee presented evidence of her lost income, past and future. The trial court allowed appellee to present evidence of future medical expenses which allegedly were not previously disclosed to appellant. The trial court denied appellant’s proffer of evidence demonstrating 26,000 prior safe passages through Caesar’s Creek. The trial court denied appellant’s proffer of evidence regarding appellee’s husband’s reciprocal seamanship duties under the Inland Navigational Rules. The trial court, over objection, instructed the jury that “if you find plaintiff established that she was injured by the wake or swells caused by the defendant, the defendant must show that it was not in their [sic] power to prevent the injury by adopting practical precaution.” During closing, appellee’s counsel alluded to appellant as a reckless big corporation and drew comparisons between appellant’s counsel’s name, Jesse Jones, and the reputed bandit, Jesse James. Appellant objected and moved for a mistrial, which was denied. The jury returned a verdict in favor of appellee for over $500,000, consisting of past and future lost wages, past and future medicals, and past and future pain and suffering. Appellant renewed its motion for directed verdict, and moved for a new trial and remittitur, all of which were denied. This appeal followed.
Appellant, in seeking a reversal, urges seven issues.
(I) That the trial court erred in denying a directed verdict, because appellant only had the duty to operate its boat in a safe and prudent manner that would avoid creating an unreasonable risk of danger. Appellant argues that it only owed a duty not to create a large, unusual, or dangerous wake, and that the appellant had demonstrated, through evidence, that the wake generated by Reef Rover V was a gentle wave of approximately 18 inches.
(II) The verdict is against the manifest weight of the evidence.
(III) The trial court erred in its instruction to the jury regarding appellant’s burden of proof. That instruction created an improper presumption of liability, one that does not exist for moving vessels.
(IV) The trial court erred by excluding evidence of foreseeability when it did not allow appellant to present evidence of 26,000 safe passages by the Reef Rovers. That evidence of previous safe passages was relevant on the issue of causation, as the operator’s experience indicated that the Reef Rover’s wake did not produce a foreseeable risk of injury.
*622 The trial court also erred by ruling that appellant could not present evidence that appellee’s husband owed reciprocal seamanship responsibilities under the Inland Navigational Rules. Further, the court erred by denying appellant’s attempt to present evidence that appellant’s Reef Rover operator had the right to presume that appellee’s hus-' band possessed ordinary skills of seamanship.
(V) The trial court abused its discretion by allowing appellant’s physician to testify about future medical expenses because the doctor’s pretrial medical report had not discussed the future medical expenses that were testified to at trial. Fla.R.Civ.P. 1.280(b)(4)(A) required appellee to state the substance of the expert doctor’s testimony. Furthermore, the doctor’s testimony about future medical expenses was speculative in that it assumed the possibility of appellee developing posttrau-matic arthritis.
(VI) The evidence does not support the jury’s award of lost future earnings.
(VII) The award was excessive when viewed in its totality. The jury’s award was motivated by passion and prejudice, as demonstrated by appellee’s counsel improperly alluding to appellant as a reckless big corporation, and improperly drawing comparisons between appellant’s counsel’s name, Jesse Jones, and the reputed bandit, Jesse James.
We reverse on the third issue because we find the instructions given to be erroneous. Because this case will be retried, we comment on the other issues as follows. We find no error in the denial of a motion for directed verdict or that the verdict was against the manifest weight of the evidence. We do think that the trial court erred in denying evidence of prior safe passage, and evidence of the responsibilities of the plaintiffs husband as the operator of a moving vessel under the Inland Navigational Rules presented under issue IV.[2] We find issue V to be moot. We have serious doubts as to the sufficiency of the evidence of the loss of future earnings raised under issue VI. As to issue VII, we find that the reference to Jesse James was self induced by appellant’s counsel, but vye do question the reference to the size of defendant’s corporation under issue VII.
It appears that an appropriate instruction upon retrial as to the plaintiffs burden of proof, would be one of simple negligence, in that this incident did not involve a vessel moored to a dock, anchored, or involved in a collision with another. See and compare Levin v. Hanks, 356 So.2d 21 (Fla. 4th DCA 1978); Maxwell v. Hapag-Lloyd Aktiengesellschaft, 862 F.2d 767 (9th Cir.1988).
Wherefore for the reasons above stated, the final judgment under review be and the same is hereby reversed and the matter is returned to the trial court for further proceedings consistent with the above.
Reversed and remanded.
NESBITT and LEVY, JJ., concur.

. Caesar's Creek is a waterway between two barrier islands running generally southeast to northwest connecting lower Biscayne Bay with the Atlantic Ocean in Southeast Dade County. It lies wholly within the Biscayne National Park. Evidence, proffered by plaintiff, was that a little over twelve months before the incident in question park officials had determined that there was no need to establish a "No Wake” zone in Caesar’s Creek.

. Counsel’s attention is called to Fabre v. Marin, 623 So.2d 1182 (Fla.1993) and its possible applicability on any retrial in this matter.