POLEN, Judge.
Linda and Jeffrey Yablon appeal from a final declaratory judgment finding that there was no coverage for uninsured motorist benefits to the Yablons under their North River insurance policy for any claims arising out of a motor vehicle accident on September 28, 1987. We reverse.
Based upon a stipulated statement of facts presented to the trial court, the sole issue for the trial court to determine was whether section 627.727(6), Florida Statutes (1986), and the Yablons’ policy of insurance with North River, precluded the Yablons from seeking underinsured motorist coverage based on their two non-consensual settlements with joint tortfeasors. The following are the facts upon which the trial court based its determination that there was no coverage.
On September 28, 1987, Linda Yablon was involved in a motor vehicle accident. At the time of the accident, Yablon had insurance with North River, under a policy which contained benefits for uninsured/underinsured coverage (UM coverage). This policy also specifically provided:
(a) We do not provide uninsured motorists coverage for bodily injury sustained by any person if that person or the legal representative settles the bodily injury claim without our consent.
As a result of the accident the Yablons brought a negligence action against William Pott Griffith, Bell Nelson Roof and Painting Company, Inc., Ford Motor Company, and Pompano Lincoln Mercury. On October 23, 1989, the Yablons through their first attorney settled with Ford Motor Company for any and all claims arising out of the subject accident for $4500, and a release was executed in favor of Ford. The Yablons never notified North River of this settlement. On August 2, 1990, the Yablons’ new attorney notified North River of a $30,000 settlement offer from Pompano Lincoln Mercury, requesting its approval. North River did not approve the settlement and said they would proceed with the defense of the UM claim. Regardless of the lack of approval, the Ya-blons entered into the settlement agreement with Pompano Lincoln Mercury and executed a release in favor of Pompano Lincoln Mercury. On November 6, 1992, the lower court entered the final declaratory judgment, finding that there was no UM coverage for the Yablons under their automobile insurance policy with North River, as a result of any claims arising out of the motor vehicle accident of September 28, 1987, because of the Yablons’ settlements without North River’s consent.
A good portion of the Yablons’ argument on appeal is based on their belief that section 627.727, Florida Statutes (1986), and the provision of their policy of insurance with North River only precludes settlement with the uninsured or underinsured motorist and not other joint tortfeasors. The pertinent portion of section 627.727 is as follows:
(6) If an injured person ... agrees to settle a claim with a liability insurer and its insured for the limits of the liability and such settlement would not fully satisfy the claim for personal injuries ... such settlement shall be submitted in writing to the underinsured motorist’s insurer which shall have a period of thirty days ... to agree to arbitrate ... approve the settlement, waive its subrogation rights against the liability insurer and its insured and authorize the execution of a full release. If the underinsured motorist’s insurer does not agree within thirty days to arbitrate the underinsured motorist’s claim and approve the proposed settlement agreement, waive its subrogation rights against the liability insurer and its insured and authorize the execution of a full release, the injured person may file suit joining the liability insurer’s insured and the under-insured motorist’s insurer to resolve their respective liabilities for any damages to be awarded; however, in such action the liability insurer’s coverage must first be exhausted before any award may be entered against the underinsured motorist’s insurer and any such award against the under-insured motorist insurer shall be excess and subject to the provisions of this subsection ....
(Emphasis added.) Although the trial court based its determination that the Yablons were precluded from coverage on its belief that the above referenced statute and insur- *1035 anee contract provision previously referenced in this opinion are applicable to joint tortfea-sors, it is not necessary to resolve that issue to determine that reversal is warranted at bar. Even if the statute did apply to joint tortfeasors, the Yablons have made the requisite showing of lack of prejudice to defeat coverage, based in part on the supreme court opinion in Fabre v. Marin, 623 So.2d 1182 (Fla.1993).
When an insured settles with a third party tortfeasor in violation of a non-consensual settlement provision in a contract for insurance the UM insurer is presumed to be prejudiced. Argiro v. Progressive American Insurance Co., 510 So.2d 635 (Fla. 3rd DCA 1987). However, this is a rebuttable presumption and does not prohibit the insured from showing there was a lack of prejudice to the uninsured motorist carrier. Government Emp. Ins. Co. v. Sutton, 400 So.2d 476 (Fla. 5th DCA 1981). See also Moskowitz v. State Farm Mutual Automobile Insurance Co. 646 So.2d 262 (Fla. 2d DCA 1994) (requirement that insured give written notice to uninsured motorist carrier before settling with tortfeasor creates only rebuttable presumption of prejudice to insurer if no such notification is given; if carrier proves that insured did not comply with that statute, insured may then go forward and show that failure to obtain consent to settle did not prejudice the insurer). The supreme court’s holding in Fabre, recognizing the abrogation of joint and several liability, along with the fact that the Yablons have waived a claim to economic damages, are sufficient to show this lack of prejudice.
Fabre involved the interpretation of section 768.81(3), Florida Statutes (Supp.1988), which provides in pertinent part:
(3) Apportionment of damages. — In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party’s percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.
623 So.2d at 1183-1184. The Fabre court reaffirmed that by enacting this statute the legislature intended to generally abolish joint and several liability with regard to non-economic damages, and the statute clearly limited liability to percentage of fault as compared to all other entities that contributed to the accident regardless of their solvency or amenability to suit. 623 So.2d at 1185. The Yablons contend and we agree that the principles of Fabre defeat North River’s argument that their subrogation rights would be prejudiced because there will never be a judgment entered against the uninsured motorist that exceeded the factfinder’s allocation of fault on such motorist’s part. In addition, the Yablons point out that they have waived any economic damages, which would vitiate any argument that North River’s subrogation rights would be prejudiced as to economic damages.
The first district’s opinion in Tallahassee Memorial Medical Regional Center, Inc. v. Wells, 634 So.2d 655 (Fla. 1st DCA 1994), reinforces the lack of prejudice, as the court recognized that a nonsettling defendant is entitled under appropriate circumstances to set off his apportioned share of damages assessed by the jury based on sums paid by settling defendants in excess of their apportioned liability. We also point out that the following language from section 627.727 suggests that when the statute was drafted the abrogation of joint and several liability was not contemplated:
The coverage described under this section shall be over and above but shall not duplicate the benefits available to the insured ... from the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident.
Thus, in light of the abrogation of joint and several liability, the application of section 627.727 to joint tortfeasors is questionable at best in the case of non-economic damages. If the UM carrier is only liable for its percentage of fault then it is difficult to contemplate a situation where prejudice would re- *1036 suit because the insured settled with a joint-tortfeasor. However, based solely on the lack of prejudice demonstrated at bar, we reverse the declaratory judgment precluding the Yablons from seeking UM coverage from North River Insurance Company.
STONE, J., and DONNER, AMY STEELE, Associate Judge, concur.