730 So.2d 389 (1999)
POLK COUNTY, a political subdivision of the State of Florida, Appellant,
v.
Donna M. SOFKA, Appellee.
No. 98-02430.
District Court of Appeal of Florida, Second District.
April 9, 1999.
*390 Hank B. Campbell of Lane, Trohn, Bertrand & Vreeland, P.A., Lakeland, for Appellant.
John W. Frost, II, and Mark A. Sessums of Frost, O'Toole & Saunders, P.A., Bartow, for Appellee.
ALTENBERND, Acting Chief Judge.
Polk County appeals an "Amended Stipulated Final Judgment," arguing that the trial court had no authority to vacate an earlier order granting new trial or to enter this judgment on the basis of the parties' earlier stipulation. We must reverse.
This is a tragic case. Ms. Sofka was driving her car in a westbound direction on Lamp Post Lane in Polk County on the evening of December 28, 1988. There was no stop sign or other marking to denote the intersection of Lamp Post Lane and Old Polk City Road. The intersection is at the crest of small hill, and she apparently did not realize that she was approaching an intersection. She drove into the intersection and was struck by a car traveling southbound on Old Polk City Road. She is now a quadriplegic.
In 1990, she filed a lawsuit against various defendants, including Polk County. She maintained that the County had a duty to install a traffic control device at this intersection. The County argued, in part, that the decision to install a stop sign was a planning-level function to which sovereign immunity attached. See Department of Transp. v. Neilson, 419 So.2d 1071 (Fla.1982). Ms. Sofka argued that the dangerousness of the intersection rose to the level of a trap and, thus, created a duty to warn the public. See City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla.1982); State Department of Transp. v. Brown, 497 So.2d 678 (Fla. 4th DCA 1986). The case between these two parties proceeded to trial in August 1993 before a Polk County jury. The jurors were instructed that they had to find the intersection was a known dangerous condition or hidden trap created by the County and not readily apparent to Ms. Sofka in order to find the County negligent. The jurors returned a verdict on August 19 determining that the County was 77% negligent, that Ms. Sofka was 23% comparatively negligent, and setting her total damages at $6,500,000. This verdict would normally have resulted in a final judgment totaling $5,005,000, with a restriction preventing execution on an amount in excess of $100,000 without legislative authorization.
On August 26, 1993, the supreme court issued its decision in Fabre v. Marin, 623 So.2d 1182 (Fla.1993). Ms. Sofka's case had been tried without instructions or a verdict form that complied with the holding in Fabre. As a result, on October 13, 1993, the trial court entered an order granting a new trial on both liability and damages.[1] No one appealed this order.[2]
Before any second trial occurred, in May 1995, the County and Ms. Sofka entered into a settlement agreement, the terms of which *391 will be discussed in greater detail at a later point in this opinion. The settlement resulted in a stipulated final judgment dated May 2, 1995, in the amount of $1,000,000, which attempted to reserve the County's right to appeal the issues of sovereign immunity and proximate causation. The County appealed, and this court issued a divided opinion in favor of Ms. Sofka, holding that the claim was not barred by sovereign immunity. See Polk County v. Sofka, 675 So.2d 615 (Fla. 2d DCA 1996). Recognizing the difficulty of the sovereign immunity issue, we certified the question to the supreme court.
The supreme court refused to answer the certified question and held that this court never had jurisdiction to review the sovereign immunity issue on the stipulated final judgment because the order granting the new trial in favor of the County had not been vacated as part of the settlement. See Polk County v. Sofka, 702 So.2d 1243 (Fla.1997). Accordingly, the supreme court quashed our decision, and on remand we dismissed the appeal for lack of jurisdiction on December 22, 1997.
When the case returned to the trial court, both sides filed motions to enforce the settlement agreement. The County asked the court to void the stipulated judgment and set the case for a new trial on all issues. Ms. Sofka basically asked the court to either (1) allow her to pursue a claims bill to enforce the judgment, or (2) enter an order vacating the earlier new trial order, and enter a new stipulated judgment. The trial court rejected the County's approach and followed Ms. Sofka's second approach. Thus, the trial court entered an order vacating the order granting new trial entered in 1993 and then entered a new "stipulated" final judgment that referenced the settlement agreement. If valid, this new judgment would appear to give this court jurisdiction to review the issues reserved in the settlement agreement.
The operative paragraphs of the settlement agreement state:
I. Settlement Payment

POLK COUNTY has paid to SOFKA and her attorney, John W. Frost, II, the sum of Forty Thousand and 00/100 Dollars ($40,000.00), the receipt and sufficiency of which is acknowledged. By virtue of this payment, POLK COUNTY in no way admits any liability for the accident and expressly denies same.
II. Stipulated Final Judgment

A One Million and 00/100 Dollar ($1,000,000.00) Stipulated Final Judgment shall be entered against POLK COUNTY. This shall be a net judgment, inclusive of all setoffs due to prior settlements, this settlement, apportionments of fault, or otherwise. This One Million and 00/100 Dollar ($1,000,000.00) Stipulated Final Judgment shall be inclusive of all costs and fees. This Stipulated Final Judgment shall not be recorded or docketed or executed against POLK COUNTY unless such is required in order to pursue a claims bill as set forth in Part IV(A) of this Agreement.
III. Appeal

A. POLK COUNTY shall be entitled to exhaust all appeals from the entry of the Stipulated Final Judgment. The record on appeal shall be the record as it exists at the time of the entry of the Stipulated Final Judgment. The parties stipulate and agree that the intermediate appellate court has jurisdiction to hear POLK COUNTY's appeal of the Stipulated Final Judgment, that POLK COUNTY has standing to bring said appeal and that such appeal shall be brought on only either or both of the two (2) issues listed below. The parties stipulate and agree that either of the below listed issues is dispositive of the issue of POLK COUNTY's liability for the accident, i.e., if the appellate court reverses and remands for the entry of judgment in favor of POLK COUNTY, then such rendering shall terminate the case as set forth in Part IV(B) of this Agreement:
(a) [the sovereign immunity issue]
(b) [the issue of proximate causation]
B. If POLK COUNTY does not file a notice of appeal within 30 days after the entrance of the Stipulated Final Judgment, then the parties stipulate that POLK COUNTY has not prevailed, and the provisions of Part IV(A) of this Settlement Agreement shall apply.

*392 C. Notwithstanding the above, if the intermediate appellate court, for any reason, determines there is no jurisdiction or standing, or if the appeal is not dispositive of the issue of POLK COUNTY's liability for the accident, then the parties agree that a material factor determinative to the parties entering the Stipulated Final Judgment will have been frustrated, that it will no longer be equitable for the Stipulated Final Judgment to have prospective application, and that the Stipulated Final Judgment shall be void. If that occurs, POLK COUNTY should be relieved of the Stipulated Final Judgment pursuant to Rule 1.540(b)(4) and/or 1.540(b)(5) of the Florida Rules of Civil Procedure (1994), and SOKA will return the sum of Forty Thousand and 00/100 Dollars ($40,000.00) paid pursuant to Part I, after which the parties shall be entitled to again proceed to trial of this case.
It is further stipulated, that the above provisions shall be self-executing and in such a situation, the intermediate appellate court's refusal to hear POLK COUNTY's appeal shall itself relieve POLK COUNTY from the Stipulated Final Judgment and require SOFKA to return the sum of Forty Thousand and 00/100 Dollars ($40,000.00), regardless of the time period which will have elapsed between the entry of the Stipulated Final Judgment and the intermediate appellate court's order refusing to hear the appeal.
D. Except as provided in paragraph C above, if POLK COUNTY or SOFKA is unsatisfied with the decision rendered by the intermediate appellate court, that unsatisfied party may petition the Florida Supreme Court to hear the appeal. If POLK COUNTY chooses not to appeal to the Florida Supreme Court, or if the Florida Supreme Court, for any reason, determines there is no jurisdiction or standing, then the appeal shall be deemed "exhausted" and the provisions of Part IV shall apply based on the decision rendered by the intermediate appellate court. If the Florida Supreme Court accepts jurisdiction and renders an opinion, then upon the rendering of such opinion, the appeal shall be deemed "exhausted" and the provisions of Part IV of this Settlement Agreement shall apply based on the decision rendered by the Florida Supreme Court.
IV. Remedies After Appeal Is Exhausted

A. If after the appellate process is exhausted, and POLK COUNTY has not prevailed on either preserved issue, then POLK COUNTY shall pay to SOFKA, and her attorney, John W. Frost, 11, an additional Forty Thousand and 00/100 Dollars ($40,000.00) within 30 days of such exhaustion. Additionally, SOFKA will then be entitled to pursue a claims bill against POLK COUNTY for up to One Million and 00/100 Dollars ($1,000,000.00) (i.e., the amount of the Stipulated Final Judgment) as provided in Chapter 11, Florida Statutes (1994). POLK COUNTY shall have the right to oppose SOFKA's pursuit of her claims bill in any way it sees fit.
B. If, after the appellate process is exhausted, POLK COUNTY prevails on either preserved issue, the case terminates. However, POLK COUNTY's prevailing and the termination of this case shall in no way adversely affect SOFKA's right to the sum of Forty Thousand and 00/100 Dollars ($40,000.00) representing the settlement proceeds referenced in Part 1.
In fairness to both parties, it is unlikely that anyone would have foreseen the actual procedural events that occurred following the execution of this settlement agreement.[3] Thus, the agreement does not squarely provide for these circumstances. The primary issue at this point is whether this court determined that it had "no jurisdiction" as described in section III(C) of the agreement or whether the appeal is deemed "exhausted" under section III(D).
We were ordered by the supreme court to dismiss the last appeal for lack of jurisdiction and we obeyed that order. Section III(C) places no time restrictions upon when this court must make the jurisdictional determination. Accordingly, we conclude that section *393 III(C) governs this case. The original stipulated final judgment must be set aside and Polk County has the right (but not the obligation) to require Ms. Sofka to return the $40,000.
The trial court had no authority, on the plaintiff's motion, to set aside the order granting a new trial in favor of the defendant. This order had been entered by another judge almost five years earlier and had not been appealed. In this state, the case law has developed that an order granting new trial is neither "interlocutory in nature," see Clement v. Aztec Sales, Inc., 297 So.2d 1 (Fla.1974), nor a final order for all purposes, see Frazier v. Seaboard System Railroad, Inc., 508 So.2d 345 (Fla.1987) (order granting new trial is not final order to extent that timely motion for rehearing will toll rendition for purposes of filing notice of appeal). An order granting new trial is final to the extent that the order cannot be vacated or overturned except in accordance with Florida Rules of Civil Procedure 1.540 and 1.530. See Huffman v. Little, 341 So.2d 268 (Fla. 2d DCA 1977); Flood v. Ware, 326 So.2d 46 (Fla. 2d DCA 1976). Thus the action of the trial court in vacating the 1993 order granting a new trial was unauthorized. The trial court was not reconsidering that order based on a change in the law or on a motion filed by the party who had benefitted from the order.[4] The stipulation did not allow the judge to take this action and, if anything, would appear to prohibit this action. Thus, despite the best intentions of the trial court, we must reverse the order setting aside the new trial order in addition to the amended stipulated judgment and remand this matter for further proceedings.
On remand, it is possible that a new trial will not be necessary. As we read the parties' agreement, they could accomplish a result comparable to the earlier agreement if the County would agree, in exchange for the $40,000 payment made to Ms. Sofka, to withdraw its motion for new trial, permit the order granting new trial to be vacated, and enter a judgment on the jury's verdict. This judgment would need to contain a monetary limitation on execution in the absence of a claims bill. The parties would need to execute a separate agreement stating that Ms. Sofka would not request more than $1,000,000 in her claims bill and that the County would limit its issues on appeal as in the prior agreement. If the County then prevailed on one of its issues, that judgment would be reversed and Ms. Sofka would be allowed to keep the $40,000, as contemplated by the earlier agreement. This approach would solve the jurisdictional issue unintentionally created by the County's earlier settlement agreement and demonstrate the good faith of the County. The County is undoubtedly concerned by the fact that they "lost" the last appeal to this court. The parties should understand that our decision was quashed for lack of jurisdiction. It is not the law of this case. Cf. Marshall & Spencer Co. v. People's Bank of Jacksonville, 88 Fla. 190, 101 So. 358 (Fla.1924) (reversal of decree results, in effect, in expunging decree from record). It was an unauthorized advisory opinion. In any future appeal, the earlier opinion will not be precedent and cannot be considered by this court.
Reversed and remanded.
WHATLEY and SALCINES, JJ., Concur.
NOTES
[1] Given the extent of the damages in this case and the relatively limited amount that can be collected without legislative action, it is unfortunate that the original verdict and record could not have been sent to the legislature for it to make its own decision about the portion of the damages over $100,000 attributable to entities other than the County. See Rice v. Brown, 645 So.2d 1020 (Fla. 2d DCA 1994) (error that affected only calculation of damages above legislative cap did not justify new trial).
[2] After the supreme court's decision in Fabre v. Marin, 623 So.2d 1182 (Fla.1993), new trials were ordered in numerous cases. In Nash v. Wells Fargo Guard Services, Inc., 678 So.2d 1262 (Fla.1996), the supreme court held that a reversal precipitated by Fabre errors does not affect the determination of damages and should not require a new trial on damages. In Schindler Elevator Corp. v. Viera, 693 So.2d 1106 (Fla. 3d DCA 1997), the Third District extended this principle to limit the new trial solely to the issue of apportionment between the parties and the nonparty defendants, holding that the issues of negligence and comparative negligence were resolved in the first trial and unaffected by the Fabre issue. See also Loureiro v. Pools By Greg, Inc., 698 So.2d 1262 (Fla. 4th DCA 1997).
[3] We note that if we held that the parties had no meeting of the minds on an essential aspect of this contract, our outcome in this case would be the same.
[4] We do not decide whether the trial court could now restrict the issues on retrial in light of the supreme court's decision in Nash, 678 So.2d 1262.