739 So.2d 646 (1999)
BEVERLY ENTERPRISES-FLORIDA, INC., d/b/a Beverly Gulf Coast-Florida, Inc., d/b/a Manhattan Convalescent Center, Appellant/Cross-Appellee,
v.
Bill McVEY, as Personal Representative of the Estate of Eldridge McVey, and Ruby McVey, Appellees/Cross-Appellants, and
Robert A. Butterworth, Attorney General of Florida, Appellee.
No. 97-05391.
District Court of Appeal of Florida, Second District.
July 21, 1999.
Rehearing Denied September 8, 1999.
*647 J. David Gallagher, Betsy E. Gallagher, and J. Bowen Brown of Gallagher & Howard, Tampa, for Appellant/Cross-Appellee.
Charles P. Schropp and Donna S. Koch of Schropp, Buell & Elligett, P.A., Tampa, and Robert E. Sharbaugh of Nursing Home Abuse Law Center, Tampa, for Appellees/Cross-Appellants McVeys.
Robert A. Butterworth, Attorney General, Tallahassee, and Douglas J. Glaid, Assistant Attorney General, Ft. Lauderdale, for Appellee Attorney General.
PATTERSON, Chief Judge.
Beverly Enterprises-Florida, Inc. (Beverly) appeals from an adverse jury verdict in favor of Bill McVey, as personal representative of the estate of Eldridge McVey, and Ruby McVey (collectively McVey). McVey cross-appeals, asserting it was error to include an additional party on the verdict form for the determination of percentages of liability. We affirm as to the main appeal and reverse as to the cross-appeal.
Beverly owns and operates Manhattan Convalescent Center, a nursing home. Bill McVey is the personal representative of the estate of his father, Eldridge McVey. Eldridge, who suffered from Alzheimer's disease, was a resident at Manhattan from 1984 until January. 1994, when he was transferred to James Haley Veteran's Hospital (the V.A. Hospital) due to his declining health. It was there that he was diagnosed as having a subdural hematoma. He subsequently died in that hospital from acute bedsores and resulting complications.
In February 1995, McVey sued Beverly in a multi-count complaint, alleging negligence and violations of chapter 400, Florida Statutes (1993). See §§ 440.022 and 400.023, Fla. Stat. (1993) (governing nursing home residents' rights and civil enforcement). His theory was that Eldridge had suffered the subdural hematoma due to the negligence of Beverly or the intentional act of a Beverly employee. He contended that the subdural hematoma was the beginning event which eventually led to Eldridge's death. McVey did not join the V.A. Hospital as a defendant, notwithstanding that Eldridge's actual demise was the result of events which occurred there. Evidence showed that Eldridge's death resulted from conditions which originated in the V.A. Hospital and which could be deemed to be the result of the hospital's negligent care and treatment.
Over McVey's objection, Beverly persuaded the trial court to include the V.A. Hospital as a defendant on the verdict form pursuant to Fabre v. Marin, 623 So.2d 1182 (Fla.1993), receded from in part on other grounds in Wells v. Tallahassee Memorial Regional Medical Center, Inc., 659 So.2d 249 (Fla.1995). The jury returned a verdict in favor of McVey for $165,308 and apportioned the liability 39% to Beverly and 61% to the V.A. Hospital.

MAIN APPEAL
Beverly has raised as error numerous evidentiary rulings of the trial court and the denial of its motion for directed verdict. With regard to Beverly's asserted evidentiary errors, some were not preserved by a contemporaneous objection and some were "close calls" by the trial judge. We find no reversible error. Having made this determination, the denial of the motion for directed verdict was proper based on the conflicting evidence presented.
*648 Beverly also challenges the constitutionality of section 400.022, Florida Statutes (1993), and asserts that the statute is vague and violates the doctrine of separation of powers. On the issue of vagueness, section 400.022, entitled "Residents' rights" is a detailed enactment intended to ensure safe, adequate and appropriate care, treatment, and health of persons in nursing homes. It defines in detail the rights of such persons ranging from the right to have private and uncensored communications with others to the right to select one's own personal physician. Section 400.022 also includes terms such as "adequate and appropriate health care" and the right to be "treated courteously, fairly and with the fullest measure of dignity." It is these terms and other similar terms which Beverly contends are too vague and ambiguous to establish an enforceable standard of care. We disagree.
The test to determine whether a statute is unconstitutionally vague is whether people of common understanding and intelligence must necessarily guess at its meaning. See State v. Rodriquez, 365 So.2d 157 (Fla.1978). In regard to "adequate and appropriate health care," a similar challenge was raised in Seaboard Air Line R.R. v. Jackson, 235 So.2d 298 (Fla. 1970), where the Florida Supreme Court reviewed a statute requiring "adequate lighting" at railroad crossings. Neither the statute nor the regulations defined "adequate lighting." The court upheld the statute on a vagueness challenge and noted that "[t]he Legislature could not feasibly define adequate lighting with any fixed standard such as so many candlepower, since what is adequate will vary according to the circumstances existing at each crossing." 235 So.2d at 299. For constitutional purposes, the court was satisfied with a "common sense interpretation" of the term.
We have examined each of the complained-of words and phrases contained in section 400.022 and find them all to be terms of common usage and understanding. Specifically, with regard to "adequate and appropriate," the statute makes clear that the care provided by nursing homes must be "consistent with the [nursing home's] resident care plan." § 400.022(1)(l), Fla. Stat. (1993). Since nursing homes, themselves, prepare such plans, they surely have notice of the requirements of these plans. Further, chapter 400 specifically defines "resident care plan." § 400.021(15), Fla. Stat. (1993). Finally, section 400.022(1)(l) directs that the requisite care must be consistent "with rules promulgated by the department." The Department of Health and Rehabilitative Services promulgated extensive regulations that detail the responsibilities of nursing homes toward their residents. See Fla. Admin. Code Rule 59A-4.100 through 59A-41.29. The statute is not unconstitutionally vague.
Beverly next challenges section 400.022 as an unconstitutional delegation of legislative authority to the Agency for Health Care Administration. Section 400.022(1)(l), Florida Statutes (1993), provides that residents shall have:
The right to receive adequate and appropriate health care and protective and support services, including social services; mental health services, if available; planned recreational activities; and therapeutic and rehabilitative services consistent with the resident care plan, with established and recognized practice standards within the community, and with rules as adopted by the agency.
Section 400.021(2) defines "agency" as the Agency for Health Care Administration. Beverly contends that the statute provides no discernable standard by which the agency can determine what constitutes "healthcare" and when that healthcare is "adequate and appropriate." Therefore, it is the agency and not the legislature which is defining what the law is. Again, we disagree.
*649 The authority of the legislature to delegate rule making authority was defined early on in our jurisprudence. In Florida State Board of Architecture v. Wasserman, 377 So.2d 653, 655-56 (Fla. 1979), our supreme court, quoting its earlier opinion in Bailey v. Van Pelt, 78 Fla. 337, 353, 82 So. 789, 793 (1919), said:
The Legislature may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted discretion in applying a law; but it may enact a law complete in itself, designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. This principle of the law is peculiarly applicable to regulations under the police power, since the complex and ever-changing conditions that attend and affect such matters make it impracticable for the Legislature to prescribe all necessary rules and regulations.
Authority to make rules and regulations to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law within designated limitations, is not an exclusively legislative power. Such authority is administrative in its nature, and its use by administrative officers is essential to the complete exercise of the powers of all the departments.
The specificity of the standards and guidelines the legislature provides may depend upon the subject matter at issue and "the degree of difficulty involved in articulating finite standards." Askew v. Cross Key Waterways, 372 So.2d 913, 918 (Fla.1978). It is this principle which we deem controlling as to section 400.022(1)(l). The term "healthcare" is one which can be easily determined in the community. What is "adequate and appropriate" healthcare will change from day to day based on advancements in medicine and technology. It is not possible for the legislature to anticipate what is now unknown or untested and include it in a finite definition. It is only by placing the authority in the agency to make this determination and make appropriate changes in rules and definitions that the legislative intent can be carried out. See State v. Dale, 775 S.W.2d 126, 130 (Mo.1989) (explaining that "[i]t would be impracticable to include the myriad and constantly changing requirements of care in the statute" governing neglect of nursing home residents). We determine that section 400.022(1)(l) is not an unlawful delegation of legislative authority.
We affirm the judgment in favor of McVey as to liability, but not as to the net amount of damages awarded.

CROSS-APPEAL
The issue on cross-appeal is the inclusion of the following question on the interrogatory verdict form:
3. Was there negligence on the part of James Haley Veteran's Hospital and/or the Veteran's skilled nursing facility which was a contributing legal cause of loss, injury or damage suffered by Eldridge McVey?
The jury answered this question in the affirmative and went on to attribute 61% of the fault to the V.A. Hospital. The court then reduced the damages due to McVey by 61%. We note that the V.A. Hospital is mentioned nowhere in the pleadings. The complaint is drawn in such a fashion as to imply that Eldridge never left the nursing home. There does, however, appear in the record an affidavit of Susan Schler, M.D., which states that she reviewed, among other things, the records of the V.A. Hospital and concluded that the care provided there fell below an acceptable standard of care. The answer makes no mention of the V.A. Hospital, but the seventh affirmative defense states that Eldridge's injuries were caused by the negligence of some person or corporation unconnected to Beverly. The evidence at trial was such that the jury could have concluded that the conditions *650 which resulted in Eldridge's demise originated in the V.A. Hospital as a result of its negligent care and treatment.
The only issue, therefore, is whether the V.A. Hospital was properly included on the verdict form under Fabre v. Marin, 623 So.2d 1182 (Fla.1993), receded from in part on other grounds in Wells v. Tallahassee Memorial Regional Medical Center, Inc., 659 So.2d 249 (Fla.1995). We conclude that it was not. In Fabre, the supreme court concluded:
We are convinced that section 768.81 was enacted to replace joint and several liability with a system that requires each party to pay for noneconomic damages only in proportion to the percentage of fault by which that defendant contributed to the accident.
623 So.2d at 1185. Thus, section 768.81, Florida Statutes (1993), and Fabre are limited to incidents involving joint tortfeasors. See J.R. Brooks & Son, Inc. v. Quiroz, 707 So.2d 861 (Fla. 3d DCA 1998). The V.A. Hospital is not a joint tortfeasor with Beverly, but rather is a subsequent or successive independent tortfeasor. See Stuart v. Hertz Corp., 351 So.2d 703 (Fla.1977). Therefore, McVey was entitled to recover the entirety of his damages from Beverly, the initial tortfeasor. See Keith v. B.E.W. Ins. Group, Inc., 595 So.2d 178 (Fla. 2d DCA 1992).
Accordingly, we reverse the final judgment only to the extent of the apportionment of damages and remand to the trial court for the entry of judgment for McVey in the full amount of the jury verdict.
Affirmed in part, reversed in part, and remanded.
PARKER, and CASANUEVA, JJ., Concur.