SUAREZ, J.
Regions Bank, f/k/a Union Planters Bank, N.A., f/k/a Capital Bank [“Regions”], seeks to reverse an order denying its motion to set aside a jury verdict and vacate the final judgment, and to remand for a new trial. We find that the trial court incorrectly failed to give the Fabre[1] instructions requested and therefore reverse as to the Fabre issue only and affirm all remaining issues.
Pass Sklar Center, Ltd. [“Pass Sklar”] is a Florida limited liability corporation that owns and operates a shopping center in Miami, and earns income from the commercial tenant rents. Regions holds a one-third interest as the limited partner. Capital Square, Inc. [“CSI”] is the general partner. CSI’s president is Horatio Roz-enblum; the vice president is his son, Martin Rozenblum. The Rozenblums live in Argentina and manage Pass Sklar remotely, via an on-site property manager and local accountants. In 1997, CSI hired Carmen Ramos to be the on-site manager. From 1997 through 2001, Ramos collected rent from the commercial tenants and deposited them into CSI’s account at Regions. Ramos did not have authority to sign checks on the CSI account. CSI hired an accounting firm, Spear Safer & Harmon (SSH) to perform compilations of the monthly statements, balance the statements and reconcile accounts. The accounting firm of Iriondo & Rodriguez later replaced SSH. Ramos would forward these SSH/Iriondo statements to the Rozenb-lums in Argentina.
In 1998, Ramos began diverting tenant rents to her own account, by either forging Rozenblum’s signature, by endorsing the rent checks made out to CSI with her own account number, or by convincing tenants to pay in cash or make checks payable to her company, C.R. Group. Over three years, she stole fifty-four Pass Sklar rent checks totaling $261,943.06, of which $181,938.98 was attributable to diverted cheeks; the remainder was attributable to forgery. During this period, SSH brought the rent shortfalls to Rozenblum’s attention, but Rozenblum did not actually follow through until 2001, when he discovered the embezzlement by visiting the shopping center and speaking to his tenants. Ramos was confronted, arrested, convicted and sentenced.
Pass Sklar, through CSI, sued the SSH and Iriondo accounting firms for negligence relating to the forged checks; both firms settled, SSH paid $0, Iriondo paid $45,000. Pass Sklar then sued Regions on the diverted checks only, seeking damages for negligence and statutory conversion for allowing Ramos to deposit tenant payments into her C.R. Group account.[2] Regions counterclaimed against CSI for pro rata contribution under the Uniform Contribution Among Tortfeasors Act (Count 1); for gross negligence in CSI’s own duties to keep its books as general partner (Count 2); and for breach of fiduciary duty as general partner in connection with Ramos’s activities, and failure to inform the bank, as limited partner, of accounting discrepancies. The case went to trial. At the close, Regions moved for directed ver- *902 diet on the ground that Pass Sklar failed to present competent evidence that Regions had breached its duty of ordinary care under prevailing standards. The trial court denied the motion. The jury returned a verdict awarding Pass Sklar the sum of $181,938.98, representing the total of the misdirected rent checks deposited to C.R. Group. The total was reduced by the ten percent (10%) negligence the jury attributed to Pass Sklar, and by $20,000 that Ramos repaid in restitution. The trial court denied Regions’ post-verdict motions to set aside, and entered final judgment.
Regions argues on appeal that the trial court erroneously refused to provide the jury with its requested jury instruction, pursuant to Fabre v. Marin, 623 So.2d 1182 (Fla.1993), and progeny, that CSI’s losses arose from its own negligence and that of its accountants, and that fault should be allocated comparatively to those entities. Regions had specifically raised Fabre as an affirmative defense, wanting the jury to consider the actions or inac-tions of the non-party accountants in its apportionment of fault between the parties with regard to the diverted checks. The trial court denied the bank’s request to include these instructions, but gave no legally sustainable explanation. The failure to so instruct, Regions asserts, mandates a new trial. We agree in part.
“The only means of determining a party’s percentage of fault is to compare that party’s percentage to all of the other entities who contributed to the accident [fraud], regardless of whether they have been or could have been joined as defendants.” Fabre, 623 So.2d at 1185 (Fla.1993) (receded from by Wells v. Tallahassee Mem’l. Med. Ctr., 659 So.2d 249 (Fla.1995)). To include non-parties on a verdict form for the purpose of apportioning liability, a defendant must plead the negligence of a non-party as an affirmative defense and specifically identify the non-party. See Nash v. Wells Fargo Guard Servs., Inc., 678 So.2d 1262, 1264 (Fla.1996). Regions appropriately raised comparative fault of the accountants as an affirmative defense in its Answer to the Complaint. In addition to the pleading requirement, the defendant has the burden of presenting at trial evidence that the non-party’s fault contributed to the incident in order to include the non-party’s name on the jury verdict.[3] Id. at 1264; see Lagueux v. Union Carbide Corp., 861 So.2d 87, 88 (Fla. 4th DCA 2003). Regions moved to set aside the verdict based, in part, on the trial court’s failure to allow a Fabre instruction.
We conclude that the trial court’s refusal to give Fabre instructions to the jury mandates a new trial, but solely as to the issue of apportionment of fault. We follow Nash, in concluding that a reversal precipitated by Fabre errors does not affect the determination of damages and should not require a new trial on damages. In Schindler Elevator Corp. v. Viera, 693 So.2d 1106 (Fla. 3d DCA 1997), the Third District Court of Appeal limited the new trial solely to the issue of apportionment between the parties and the non-party defendants, stating that, “where a jury has been prevented from properly considering apportionment because a Fabre non-party was erroneously omitted from the verdict form, the solution is a new trial limited to the apportionment issue, not a new trial on all liability issues.” Id. at 1108; Nash, 678 So.2d at 1263-64. We therefore reverse and remand for a new trial solely on the *903 issue of apportionment between the parties and non-parties, where the non-party accounting firms must be included on the verdict form. We affirm all remaining issues on appeal.
Reversed and remanded.

. Fabre v. Marin, 623 So.2d 1182 (Fla.1993).

. Pass Sklar was contractually precluded from pursuing the forged check issues with the bank because Pass Sklar did not notify Regions of any signature irregularities upon receipt of its monthly statements, pursuant to the Depositors Agreement.

. CSI argues on appeal that there was no evidence presented at trial of negligence on the part of the accountants. We make no determination on this issue, as the trial court did not make a finding on that issue below, but denied the request for a Fabre instruction solely because the jury instructions had become, in the court's opinion, too complicated.