863 So.2d 1230 (2003)
Lawrence R. GROBMAN, M.D., Lawrence R. Grobman, M.D., P.A., and SSJ Mercy Health System, Inc., d/b/a Mercy Hospital, and Mercy Hospital, Inc., d/b/a Mercy Hospital, Appellants,
v.
Elizabeth POSEY, individually and as parent and legal guardian of Justin Posey and Austin Posey, her minor children, Appellees.
Nos. 4D02-717, 4D02-747.
District Court of Appeal of Florida, Fourth District.
December 31, 2003.
*1231 Helen Ann Hauser of Dittmar & Hauser, P.A., Coconut Grove, and Manuel Epelbaum of Robert J. Dickman, P.A., Coral Gables, for appellants Lawrence R. Grobman, M.D., and Lawrence R. Grobman, M.D., P.A.
Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, Joel R. *1232 Wolpe and Isabel Negreira of Wolpe & Leibowitz, L.L.P., Miami, and Lewis W. Fishman of Lewis W. Fishman, P.A., Miami, for appellants SSJ Mercy Health System, Inc., d/b/a Mercy Hospital, and Mercy Hospital, Inc., d/b/a Mercy Hospital.
Edna L. Caruso of Caruso & Burlington, P.A., West Palm Beach, Scott M. Newmark and Sheldon J. Schlesinger of Sheldon J. Schlesinger, P.A., Fort Lauderdale, for appellees.
GROSS, J.
Dr. Lawrence R. Grobman and SSJ Mercy Health System, Inc. d/b/a Mercy Hospital appeal from an amended final judgment entered after a jury trial in a medical malpractice action.[1]
The issue we write to address is whether Grobman and Mercy Hospital, non-settling defendants, are entitled to a full setoff for sums paid by a settling defendant prior to trial. Because section 768.81, Florida Statutes (1995), did not apply to the causes of action asserted against the settling defendant, we hold that appellants are entitled to a setoff of the full amount paid in settlement.
In May 1995, Elizabeth Posey went to her primary care physician complaining of ear problems. Posey's physician noticed something in her ear and referred her to an ear, nose, and throat doctor, Dr. Brad Nitzberg, who ordered a CT scan. The scan disclosed a mass which was potentially a tumor, so Nitzberg referred Posey to a neuro-otologist, Dr. Grobman, for surgery.
On June 13, 1995, Posey went to Mercy Hospital for outpatient surgery to remove what was thought to be a vascular tumor in her middle ear. Dr. Grobman removed the "tumor," which was actually a congenital defect known as an aberrant carotid artery. Due to the massive blood loss Posey experienced and the unexpected complexity of the surgery, she was admitted to Mercy Hospital for overnight observation. Several hours after her admittance, Posey suffered a stroke.
In 1996, Posey and her husband[2] filed a twelve-count complaint for medical malpractice against numerous defendants[3] on behalf of themselves individually, and as parents of Justin and Austin Posey. The complaint was later amended.
Among the defendants were Dr. Grobman, who performed the surgery, Mercy Hospital, where the surgery was performed, Dr. Nitzberg, the doctor who referred Posey to Dr. Grobman, and Dr. Stuart Hantman, the radiologist who had initially read the CT scan of Posey's middle ear.
Significant for this opinion, Posey sued her HMO, treating Prudential Health Care Plan, Inc. and Prudential Insurance Company of America (collectively referred to in *1233 this opinion as "Prudential") as one entity. Against Prudential, Posey asserted two theories of liability: first, that Prudential was vicariously liable for the conduct of its agents, Grobman, Nitzberg, and Hantman and second, that Prudential was directly liable for negligently credentialing[4] its health care providers, Grobman, Nitzberg, and Hantman.
Defendants Grobman and Mercy Hospital raised a defense under Fabre v. Marin, 623 So.2d 1182 (Fla. 1993), receded from in part by Wells v. Tallahassee Memorial Regional Medical Center, Inc., 659 So.2d 249 (Fla.1995). Nitzberg, Hantman, and Prudential settled with Posey prior to trial. Prudential settled for $1,250,000; that amount was not allocated between the causes of action against Prudential, nor was it allocated between economic and non-economic damages.
The trial proceeded against Grobman and Mercy Hospital. As for the Fabre defense, appellants requested that the jury apportion fault to Nitzberg, Hantman, and the anesthesiologist involved in the surgery. The defendants did not ask that the jury apportion fault to Prudential, which was not included on the verdict form.
The jury returned a verdict finding Grobman 90% negligent and Mercy Hospital 10% negligent. The jury found the three Fabre non-party doctors not negligent. The jury awarded damages of $5,663,812: past medicals of $134,000, future medicals of $2,000,000, past lost earnings of $137,444, future lost earning capacity of $862,368, past pain and suffering of $500,000, and future pain and suffering of $2,000,000. The jury awarded Posey's two children $75,000 each.
Among the post-trial motions filed by Grobman and Mercy Hospital were ones seeking a setoff of the amount Prudential paid in settlement of the case. The trial court denied the motions on the ground that the defendants' failure to have the jury decide whether Prudential was liable precluded their ability to claim a setoff.
Appellants' entitlement to a setoff turns on whether Prudential was a party defendant to which the apportionment requirement of section 768.81(3), Florida Statutes (1995)[5] applied. If section 768.81(3) did not apply, then Prudential was not a proper Fabre defendant, and the failure to include it on the verdict form had no legal effect.
*1234 A trilogy of supreme court cases has considered a non-settling defendant's entitlement to a setoff for sums paid before trial to the plaintiff by a settling defendant. See D'Angelo v. Fitzmaurice, 863 So.2d 311 (Fla. 2003); Gouty v. Schnepel, 795 So.2d 959 (Fla.2001); Wells, 659 So.2d at 253. All three cases attempt to reconcile the requirement of section 768.81(3) that "each defendant is solely responsible for his or her share of noneconomic damages," Wells, 659 So.2d at 252, with the setoff provisions of 768.041(2), 46.015(2), and 768.31(5), Florida Statutes (1995).
In D'Angelo, the supreme court limited its holding in Gouty and held that a "settling defendant does not have to be found liable before an economic damages setoff can be given." 863 So.2d at 316. To obtain a setoff for non-economic damages, D'Angelo maintained the Gouty requirement that a defendant must follow the procedure outlined in Nash v. Wells Fargo Guard Services, Inc., 678 So.2d 1262, 1263-64 (Fla.1996): "[t]he nonsettling defendant is obligated to file appropriate pleadings and to ensure that any settling party under Fabre appears on the verdict form." D'Angelo, 28 Fla. L. Weekly at S842.
The key question is whether the holding in D'Angelo applies to this case.
Crucial to the trilogy of section 768.81 settlement cases is the assumption that section 768.81(3) applies to the claim against the settling defendant. In cases to which it applies, section 768.81 "eliminates joint and several liability for noneconomic damages and limits joint and several liability for economic damages." D'Angelo, 863 So.2d at 314. Section 768.81 "applies to negligence cases, including professional malpractice cases." Id.; see § 768.81(4), Fla. Stat. (1995). Where section 768.81 applies, it limits the scope of the statutes regarding setoffssections 46.015(2), 768.041(2), and 768.31(5), Florida Statutes (1995). See D'Angelo, 863 So.2d at 314.
To decide whether section 768.81 applies requires more than determining whether the case at hand is a negligence case. One must examine the cause of action asserted against a settling defendant to determine if section 768.81 requires apportionment of liability with another defendant. Such an inquiry asks if the settling defendant was the type of defendant that could have been added as a Fabre defendant on the verdict form.
In Fabre, the supreme court wrote that "section 768.81 was enacted to replace joint and several liability with a system that requires each party to pay for noneconomic damages only in proportion to the percentage of fault by which that defendant contributed to the accident." 623 So.2d at 1185 (emphasis added). Under the doctrine of joint and several liability, "all negligent defendants were held responsible for the total of the plaintiff's damages regardless of the extent of each defendant's fault in causing the accident." Id. at 1184. The impetus for enacting section 768.81 was the perceived unfairness of "requiring a defendant to pay more than his or her percentage of fault." Id. at 1185.
Section 768.81 requires apportionment of non-economic damages "in cases involving joint tortfeasors." Letzter v. Cephas, 792 So.2d 481, 487 (Fla. 4th DCA 2001). Joint tortfeasors are "`[t]hose who act together in committing wrong, or whose acts if independent of each other, unite in causing a single injury.'" Id. at 486 (quoting Ass'n for Retarded Citizens-Volusia, Inc. v. Fletcher, 741 So.2d 520, 529 n. 3 (Fla. 5th DCA 1999) (Harris, J., dissenting) (quoting BLACK'S LAW DICTIONARY 752-53 (5th ed.1979))). In Hudson v. Weiland, 150 Fla. 523, 8 So.2d 37 (1942), *1235 the supreme court described the joint and several liability of joint tortfeasors:
[W]here the negligences of two or more persons concur in producing a single, indivisible injury, then such persons are jointly and severally liable although there was no common duty, common design or concerted action.
Id. at 38 (emphasis in original).
Central to the concept of joint and several liability covered by section 768.81 is the idea that a potential defendant caused or contributed to a plaintiff's injury, that a defendant's negligence "concurred" with that of another defendant to produce an injury. Theoretically, fault can be allocated among negligent defendants whose conduct concurred in causing the plaintiff's injury.
Vicarious liability does not mesh with the concept of liability that can be apportioned among joint tortfeasors. The vicariously liable party is responsible to the plaintiff to the same extent as the primary actor; both are jointly liable for all of the harm that the primary actor has caused. In such a situation, fault cannot be divided into the percentages contemplated by section 768.81. Also, the vicariously liable party has engaged in no wrongful conduct. Thus, there can be no "fault" within the meaning of section 768.81(3). The basis for imposing liability is that party's relationship with the negligent tortfeasor.
The supreme court has expressly recognized that apportionment of fault under section 768.81 is not appropriate where a defendant's liability is only vicarious. In Nash, 678 So.2d at 1263-64, the supreme court established "the procedure for apportioning the fault [under section 768.81] of a person or entity not joined as a defendant in the suit." D'Angelo, 863 So.2d at 315. The court held "that the named defendant cannot rely on the vicarious liability of a nonparty to establish the nonparty's fault." Nash, 678 So.2d at 1264. This holding is consistent with the observation that
[a]pportionment of responsibility is simply ill-suited for cases where a party's liability for negligence is solely vicarious. As one commentator has explained:
The liability of a master for the acts of a servant ... within the scope of the employment ... stands upon grounds that do not support apportionment. Under the doctrine of respondeat superior, the master becomes responsible for the same act for which the servant is liable, and for the same consequences. Ordinarily there is a sound basis for indemnity, but not for any apportionment of damages between the two.
William D. Underwood & Michael D. Morrison, Apportioning Responsibility in Cases Involving Claims of Vicarious, Derivative, or Statutory Liability for Harm Directly Caused by the Conduct of Another, 55 BAYLOR L.REV. 617, 636 (2003) (quoting W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS, § 52, at 346 (5th ed.1984)); see Danner Constr. Co. v. Reynolds Metals Co., 760 So.2d 199, 203 (Fla. 2d DCA 2000) (stating that a defendant "could not be a Fabre defendant" because it was only "vicariously liable without personal fault"); J.R. Brooks & Son, Inc. v. Quiroz, 707 So.2d 861, 863 (Fla. 3d DCA 1998) (holding that section 768.81 did not apply to a defendant whose fault was purely vicarious).
For these reasons, the vicarious liability theory of recovery asserted against Prudential did not trigger the application of section 768.81.
Cases of derivative liability, such as Prudential's negligent credentialing of a health care provider, "involve wrongful conduct both by the person who is derivatively liable and the actor whose *1236 wrongful conduct was the direct cause of injury to another." Underwood & Morrison, supra, at 619. "Although the liability is not vicarious (because the derivatively liable person has engaged in tortious conduct), the liability is derivative because it depends upon a subsequent wrongful act or omission by another." Id. at 642. Derivative liability is similar to vicarious liability in that (1) there is no cause of action unless the directly liable tortfeasor commits a tort and (2) the derivatively liable party is liable for all of the harm that such a tortfeasor has caused.
Given the similarity between derivative and vicarious liability, we hold that section 768.81 does not require the apportionment of responsibility between a defendant whose liability is derivative and the directly liable negligent tortfeasor. As one law review article has explained:
The logic behind refusing to apportion responsibility between directly and derivatively liable persons is compelling. When the risk of tortious or criminal conduct is the very risk that made the derivatively liable party's conduct negligent in the first place, allowing the occurrence of that foreseeable conduct to reduce the responsibility of the derivatively liable party undermines the incentive for that party to take precautions against this risk.
Id. at 646.[6]
This reasoning was one basis for our holding in Suarez v. Gonzalez, 820 So.2d 342 (Fla. 4th DCA 2002). There the defendant was sued for negligently hiring an independent contractor who installed kitchen cabinets that fell onto the plaintiff. The installer was never identified and was not a party to the lawsuit. One of the questions on appeal was whether the trial court erred in excluding the anonymous independent contractor from the verdict form, so that the jury could allocate fault pursuant to section 768.81. Id. at 347. Comparing the case to one of vicarious liability, we held that the trial court correctly excluded the independent contractor from the verdict form because section 768.81 did not apply:
Here, because [the defendant] negligently hired the "phantom" contractor, she is liable for his negligence to the same extent as if she had done the work herself. This is similar to situations of vicarious liability, such as master and servant, or the breach of a nondelegable duty, where there are no logical bases for apportioning liability into percentages of fault. Liability for damages may not be apportioned to a nonparty defendant where that liability is vicarious in nature.
Suarez, 820 So.2d at 347.[7]
*1237 The negligent credentialing cause of action in this case is one of derivative liability like the negligent hiring theory of recovery in Suarez. In neither case does section 768.81 require apportionment of liability between the derivatively liable defendant and the directly liable negligent tortfeasor. Thus, Prudential was not a proper Fabre defendant to be placed on the verdict form under this theory of liability.
Because neither the vicarious nor the derivative claim against Prudential was subject to apportionment under section 768.81(3), the trilogy of section 768.81 settlement cases ending with D'Angelo does not control. Instead, the setoff issue is governed by sections 46.015 and 768.041, Florida Statutes (1995), which require a complete setoff as to amounts received from Prudential. See Quiroz, 707 So.2d at 863.
This result finds support in a case holding section 768.81 to be inapplicable in a similar context. Publix Supermarkets, Inc. v. Austin, 658 So.2d 1064 (Fla. 5th DCA 1995), involved two defendants, a negligent driver who caused an accident and Publix, which committed the willful tort of selling alcohol to a person under twenty-one. Section 768.125, Florida Statutes (1991) provided that a "culpable vendor becomes vicariously liable for the damages caused by the intoxicated tortfeasor." Austin, 658 So.2d at 1068. The fifth district held that it was error for the trial court to allow the jury to apportion fault between the driver and Publix. Id. The court observed that if Publix were liable, "it would be liable for the entire judgment entered against" the driver; there was "no logical way for a jury to balance the wrongdoing of the willful vendor and the intoxicated tortfeasor." Id.
We find no error concerning the other issues raised on appeal. We direct the circuit court to enter amended final judgments consistent with this opinion. Affirmed in part, reversed in part, and remanded.
POLEN, J., and OFTEDAL, RICHARD L., Associate Judge, concur.
NOTES
[1] On March 21, 2002, this court consolidated Case Nos. 4D02-717 and 4D02-747 for record purposes only. We now sua sponte consolidate these two cases for all purposes.
[2] Posey's husband dismissed his claims at the beginning of trial.
[3] The defendants to the original action included: 1) Brad Nitzberg; M.D.; 2) Stuart Hantman, M.D.; 3) Stuart Hantman, M.D., P.A.; 4) Coral Springs Diagnostic Center, Ltd.; 5) C.S.D.C., Inc. d/b/a Coral Springs Diagnostic Center Ltd.; 6) Dauer Coral Springs Radiologists, P.A. d/b/a Dauer Coral Springs Radiology Associates; 7) Edward A. Dauer, M.D., P.A. d/b/a Florida Medical Radiology Associates; 8) Lawrence R. Grobman, M.D.; 9) Lawrence R. Grobman, M.D., P.A.; 9) Miami Ear Institute, Inc.; 10) Mercy Balance Center, Inc.; 11) NIB of South Florida, Inc.; 12) SSJ Mercy Health System, Inc. d/b/a Mercy Hospital; 13) Mercy Hospital, Inc. d/b/a Mercy Hospital; 14) Prudential Insurance Company of America d/b/a Prudential; and 15) Prudential Health Care Plan, Inc. d/b/a Prucare.
[4] Paragraph 215 of the amended complaint alleged that Prudential had a duty "to use reasonable care in assuring the competence of those physicians who are named as providers" and a duty "to name as provider only those health care providers who were substantially fit in the field for which they are to provide services to Plan Members." Paragraph 219 alleged that Prudential had "negligently and carelessly failed to assure the competence" of numerous defendants and "negligently and carelessly failed to take corrective action in the form of investigation, restriction or removal from list of providers" after Prudential "became aware of" the defendants' "unfitness to serve as ... health care providers to members of the Plan."
[5] Although section 768.81(3) was amended in 1999, the "applicable version is that which was in effect when the cause of action arose." D'Angelo v. Fitzmaurice, 863 So.2d 311, 314 n. 9 (Fla. 2003). The version of the statute in effect in 1995 provided:

(3) APPORTIONMENT OF DAMAGES.In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.
§ 768.81(3), Fla. Stat. (1995).
[6] In a case involving the negligent failure to employ reasonable security measures, the supreme court adopted similar reasoning in describing the public policy as to why section 768.81 does not require apportionment of liability between the negligent tortfeasor and the intentional, criminal, non-party tortfeasor. See Merrill Crossings Assocs. v. McDonald, 705 So.2d 560, 562-63 (Fla.1997). After quoting from the Restatement (Second) of Torts § 449 (1965), the court wrote that "it would be irrational to allow a party who negligently fails to provide reasonable security measures to reduce its liability because there is an intervening intentional tort, where the intervening intentional tort is exactly what the security measures are supposed to protect against." McDonald, 705 So.2d at 562-63.
[7] Cases in other jurisdictions are split on the issue of whether fault should be apportioned between one who negligently entrusts an automobile and the negligent person who takes the vehicle and causes an accident. Compare Loom Craft Carpet Mills, Inc. v. Gorrell, 823 S.W.2d 431 (Tex.Ct.App. 1992), and Rosell v. Cent. W. Motor Stages, Inc., 89 S.W.3d 643 (Tex.Ct.App.2002), with McCart v. Muir, 230 Kan. 618, 641 P.2d 384 (1982), and Ali v. Fisher, 2003 WL 22046673 (Tenn.Ct.App. July 3, 2003).