FORST, J.
This case arises from the very serious injuries suffered by Appellee Rodney Wilde when his motorcycle was in an accident with a vehicle driven by Leroy Felt. At the time of the accident, Felt was pulling out of the premises of Appellant Okeechobee Aerie 4137, Fraternal Order of Eagles, Inc.' (“the Eagles”). Felt was heavily inebriated, at least partially as a result of drinks purchased from the Eagles. Rodney and his wife, Charlotte (“the Appel-lees”), sued the Eagles for damages, alleging they were negligent and in violation of section 768.125, Florida Statutes, for serving alcohol to “a person habitually addicted to the use of any or all alcoholic beverages.” After a lengthy trial, a jury found in favor of the Appellees and awarded them approximately $11 million in damages.
The Eagles, joined by their insurance company as a co-defendant, appeal, raising five issues (though not challenging the jury’s determination that Felt was known to be “a person habitually addicted to the use of any or all alcoholic beverages,” per section 768.125). Appellants contend: (1) the trial court’s instructions on, and allowance of evidence regarding,, the Responsible Vendor Act was reversible error; (2) the trial court abused its discretion in allowing the Appellees to introduce evidence of a prior lawsuit against the Eagles brought by a different party; (3) the trial court abused its discretion in not granting a new trial based on allegedly improper comments during the Appellees’ closing arguments; (4) the trial court reversibly erred in not including Leroy Felt on the verdict form; and (5) the trial court abused its discretion in denying remittitur with respect to the damages awarded. The Appellees raise a single issue on cross-appeal, arguing that the trial court abused its discretion in admitting evidence of the Eagles’ charitable work. For the reasons given below, we reverse the judgment of the trial court and remand for a new trial.[1]
Background
As noted above, Leroy Felt was a patron of the Eagles’ bar on the date of the accident. After he left the premises, he *337 was involved in an accident with Appellee Rodney Wilde’s motorcycle, resulting in serious and permanent injuries to Mr. Wilde.- Felt’s blood alcohol content was determined to be 0.26 at the time of the accident, well over the legal limit. There was testimony at the ensuing trial indicating that the servers at the Eagles’ bar knew Felt to be an alcoholic.
Analysis
A. Use of the Responsible Vendor Act as Evidence
The most dispositive issue raised by the Eagles is whether the trial court erred in allowing evidence of, and instructing the jury on, the Responsible Vendor Act, sections 561.701-06, Florida Statutes (“the RVA”). “A trial court’s ruling on the admissibility of evidence is reviewed for abuse of discretion, limited by the rules of evidence.” Seymour v. State, 187 So.3d 356, 358 (Fla. 4th DCA 2016). Discussion of this issue, however, first requires clarification of the exact cause of action brought by the Appellees. That issue is one of statutory interpretation, which we review de novo. Brown v. City of Vero Beach, 64 So.3d 172, 174 (Fla. 4th DCA 2011).
The Eagles suggest that the only cause of action here is under section 768.125, Florida Statutes. The Appellees argue that there were two causes of action presented to the jury, the first under section 768.125 and the second under general negligence. Neither party is correct. Section 768.125 says, in relevant part:
A person who sells or furnishes alcoholic beverages to. a person of lawful drinking age shall not thereby become, liable for injury or damage caused- by or resulting from the intoxication of such person, except that a person ... who knowingly serves -a person habitually addicted to the use of any or alb alcoholic beverages may become liable for injury or damage caused by or resulting from- the intoxication of such ... person.
§ 768.125, Fla. Stat. From its clear language, section '768.125 does not create a cause of action. Rather, it is a protective statute meant to eliminate a cause of action where one might otherwise exist, except in certain circumstances. This interpretation was made clear by the Florida Supreme Court in Ellis v. N.G.N. of Tampa, Inc., 586 So.2d 1042 (Fla.1991). There, the court described its prior case law “expressly rejecting] the claim that section 768.125 created a cause of action,” while simultaneously recognizing that “although limited by the provisions of section 768.125, there is a cause of action against a vendor for the negligent sale of alcoholic beverages.” Id. at 1046-47. That cause of action, when the habitual-alcoholic exception to the statute applies, “is ordinary negligence.” Id. at 1049.
At oral argument, counsel for the Appellees argued that, once the habitual-alcoholic exception from section 768.125 was proven, all that remained to be proven was causation and damages. We - reject this argument. A negligence action requires four elements: duty, breach, causation, and damages. See Cevallos v. Rideout, 18 So.3d 661, 664 (Fla. 4th DCA 2009), quashed on other grounds, Cevallos v. Rideout, 107 So.3d 348 (Fla.2012). A determination that a drinking establishment knowingly served a. habitual alcoholic is not a per se determination that the duty and breach elements of negligence have been met. Ellis, 586 So.2d at 1049. Although we decline to specifically address situations that may arise in future cases, proactive attempts by a drinking establishment to protect the public from a habitual alcoholic whom it has knowingly served may be sufficient to show that there has been no breach of a legal duty.
*338 The Eagles are thus incorrect in their assertion that the only cause of action here was under section 768.125 and that evidence of negligence was irrelevant. The cause of action was negligence; however, it simply was negligence that was alleged to not be limited by section 768.125. Similarly, the Appellees are incorrect in asserting in their answer brief that there were two causés of action. The presence on the verdict form of two questions does not indicate that there are two causes of action being brought; it indicates that there is a single cause of action, negligence, with a threshold question, section 768.125 noncompliance.
Here, the jury found, and the Eagles concede for the purposes of appeal, that the Appellees proved the threshold question. The issue before us is therefore whether evidence of and the instructions on the RVA were appropriate in the negligence action brought by the Appellees (which was unencumbered by the protections of section 768.125). We hold that it was not.
The RVA is a voluntary statute that imposes no duties on any vendor. Instead, the RVA serves to protect a vendor from certain administrative penalties resulting from serving an underage person or from selling or allowing the sale of illegal drugs on its premises. '§ 561.706, Fla. Stat. A vendor may choose to comply with the RVA’s qualification provisions or to not comply, and Suffer no harm whatsoever because of that decision. The fact that the RVA creates no legal obligation leads to the conclusion that it is impossible to “violate” or “not comply” with the RVA. A vendor can choose not to participate in the program, but any word that would suggest a requirement to participate (as “violate” and “comply” both do) is simply inapplicable. •
Therefore,- although it is true that “the violation of a statute may be evidence of ... a breach of a standard of care [in a negligence action],” Estate of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC, 983 So.2d 1175, 1182 (Fla. 2d DCA 2008), this rule does not apply to the RVA because the RVA cannot be violated. A decision by an organization not to avail itself of certain optional protections is not proper evidence that it has breached some standard of care.
The Appellees argue that the RVA was not used to show a breach of a standard of care, but rather was used instead only to show that the Eagles were aware of the existence of the law. Leaving to the side the issue of whether such notice would even be relevant, we are unpersuaded that this is what the RVA was actually introduced for. Admittedly, the trial court did give a limiting instruction to the jury early in the trial when it said that the evidence of the RVA was “intended to establish that the Eagles club had knowledge of this law.” But statements by the Appellees in both opening and closing arguments, as well as the judge’s instructions to the jury before closing, diminish the apparent effectiveness of that limiting instruction.
First, in their opening argument, Appel-lees’ counsel told the jury that the RVA “gives us guidance on what responsible service is ... and ... what responsible vendors do.” Counsel then said that “[tjhis act shows us the reasonable standards of care in the bar business, and they tell us what reasonable careful people do, and that goes back to the negligence definition.” In closing, Appellees’ counsel argued that “[responsible bars use reasonable care; irresponsible bars do not,” and that “[t]his bar was not responsible,” immediately before describing what the RVA requires in order for a vendor to fall under its protections.
*339 Furthermore, in its instructions to the jury, the court defined negligence, then read large portions of the RVA’s qualification provisions, quoted three more statutes that, together, take up fewer lines in' the transcript than the RVA description, and concluded the section by stating that “[violation of the statutes and codes is evidence of negligence.” Later, the court instructed the jury that the Eagles “is a vendor of alcohol as the word ‘vendor’ is used in the Florida Responsible Vendor Act, and is subject to the requirements of Florida’s Responsible Vendor Act.”
These arguments and instructions do not relate to notice. Instead, they are clear statements to the jury that the RVA is something that can be violated (which it is not), that “violation” of the RVA means that an establishment is irresponsible (which is not necessarily the case), that the Eagles were required to follow the RVA (which they were not), and that “violation” of the RVA is evidence of a breach of a standard of care when determining negligence (which it is not). Despite the limiting instruction, the RVA was used throughout the trial as evidence of a breach of a standard of care, which, because the RVA imposes no legal duty, is improper.
Even assuming the RVA had been used merely to show notice, the above discussion reveals how this may not have been clear to the jury. “Relevant evidence is inadmissible if its probative value is substantially outweighed by the ... confusion of issues.” § 90.403, Fla. Stat. The probative value of the RVA was minimal because there was no need to refer to a statute to describe the standard of care here. Evidence of common sense, societal standards, and the Eagles’ failure to have adequate training were all used at trial. The inclusion of the RVA, however, was a step too far. Therefore, to the extent that evidence of the RVA was relevant, it should have been excluded in order to prevent the jury from improperly viewing the Eagles’ decision not to participate in the voluntary program as evidence of their negligence.
To summarize this issue, we hold that there is no cause of action under section 768.125; that the cause of action actually alleged in this case was negligence; that the jury verdict contained two questions in order to answer both the predicate requirement of section 768.125 and the substantive issue of negligence; that “noncompliance” with a statute that imposes no legal duty or responsibility on organizations cannot be used as evidence of negligence; that, despite the limiting instruction, this is how the RVA was used in this case; and that, even if the RVA was limited to showing notice, its minimal probative value was substantially outweighed by the confusion it likely caused the jury. Evidence of the RVA should not have been admitted.
B. Evidence regarding the prior lawsuit against the Eagles
The Appellees introduced evidence relating to a prior suit brought by the daughter of a person who was killed in an accident allegedly caused by a person who had been drinking at the Eagles’ bar. “A trial court’s ruling on the admissibility of evidence is reviewed for abuse of discretion, limited by the rules of evidence.” Seymour, 187 So.3d at 358.
The accident for which evidence was introduced occurred over a decade before the trial here. The Appellees claim that evidence of this accident was for the purpose of showing that the Eagles were on notice of the RVA. However, as discussed above, notice of the RVA was not relevant to this case. See § 90.402, Fla. Stat. (allowing only relevant evidence to be admitted). Although notice that the Eagles’ *340 training and procedures were inadequate to prevent all accidents in the past may-have been relevant, the prejudicial effect of this particular evidence substantially outweighs its probative value. See § 90.403, Fla. Stat. The evidence should not have been admitted. •
C. Appellees ’ Closing Argument
The Eagles moved for a new trial based on comments made by the Appellees in their closing argument. Orders denying a motion for new trial are reviewed for abuse of discretion, Williams v. Moran Towing & Transp, Co., 504 So,2d 27, 28 (Fla. 4th DCA 1987).
On appeal, the Eagles specifically mention nine comments that were made during closing argument. However, objections were preserved concerning only three of those comments. “[W]hen a party objects to instances of attorney misconduct during trial, and the objection is sustained, the party must also timely move for a mistrial in order to preserve the issue for a trial court’s review of a motion for new trial.” Companioni v. City of Tampa, 51 So.3d 452, 456 (Fla.2010). Here, three statements were not objected to at all; three statements were objected to and sustained but did not have a motion for mistrial; one was objected to, sustained, and a motion for mistrial was made; and two were objected to and overruled. Only the last two categories of statements were properly preserved.[2]
The preserved statements were:
(1) There is no one other than you [the jury] to act. The alcohol beverage and tobacco bureau will not act. The Grand, a major- organization that oversees 15,-000 Aeries like this one, will not act. This Aerie, 4137, will not act.
(2) [E]ither this case will long be remembered or it will soon be forgotten. Your verdict is to tell us the answer to that question.
(3) If you do not award the full measure of damages in this ease, for whatever reason, it’ll just keep happening and happening. And it’s up to you to think about whose fault that will be.
The Eagles argue that the “it’ll just keep happening” comment was a “send a message” argument that is inappropriate when linked to a compensatory damage award. R.J. Reynolds Tobacco Co. v. Gafney, 188 So.3d 53, 57 (Fla. 4th DCA 2016). The Eagles also contend that this same comment was “highly prejudicial and inflammatory” and therefore cause for reversal. Good Samaritan Hosp. Ass’n v. Saylor, 495 So.2d 782, 783-84 (Fla. 4th DCA 1986). The Appellees counter that this statement was not outside the “wide latitude” afforded to counsel, during closing arguments. Id. at 783.
The other two preserved comments, the “no one other than you to act” comment and the “long remembered or soon forgotten” comment, are both alleged by the Eagles to have been improper arguments that were “intended to evoke a sense of community law through common duty and expectation.” Airport Rent-A-Car, Inc. v. Lewis, 701 So.2d 893, 896 (Fla. 4th DCA *341 1997). The concern with such comments is that they may “plant[ ] the seed to motivate the jury to include a punitive aspect in the damage award.” Id.
Examining these arguments, we first conclude that the “no one other than you” comment was not a call for an increase in damages, it was a call to find the Eagles liable. This comment does not fit within the framework of conscience of the community errors. The trial court did not err by refusing to grant a new trial based solely on this comment.
Next, although the trial court erred in overruling the Eagles’ objection to the “long remembered or soon forgotten” entreaty (which does call for the jury to impose a punitive aspect in the damages award), it did sustain the Eagles’ objection to the “it’ll just keep happening” comment and instructed the jury to “decide the- case only on the evidence presented” and not “to operate as the conscience of the community.” Denial of the Eagles’ motion for new trial based solely on this one comment was not reversible error in light of the curative instruction provided. Similarly, an appellate court’s order of a new trial would not be warranted solely due to the trial court’s erroneous overruling of the objection to the “long remembered or soon forgotten” statement.
Nonetheless, the “long remembered or soon forgotten” comment combined with the “it’ll just keep happening” statement straddle the line between permissibility and reversal. Because we are already requiring a new trial due to the errors discussed earlier in this opinion, we need not determine on which side of the aforementioned line the combined comments fall, although the answer is clear when the other objectionable comments that were not properly preserved for appellate review are taken into account.
D. The non-inclusion of Leroy Felt on the verdict form
The Eagles argue that Felt, the driver in the accident at issue here, should have been included on the verdict form so that the jury could allocate liability between him and the Eagles. See Fabre v. Marin, 623 So.2d 1182 (Fla.1993). Whether a Fabre defendant should have been on the verdict form is reviewed de novo. See R.J. Reynolds Tobacco Co. v. Grossman, 96 So.3d 917, 919-20 (Fla. 4th DCA 2012). We addressed this issue in Grobman v. Posey, 863 So.2d 1230 (Fla. 4th DCA 2003), and see no reason to recede from that opinion.
In Grobman, we held that “section 768.81 [the statute interpreted in Fabre ] does not require the apportionment of responsibility between a defendant whose liability is derivative and the directly liable negligent tortfeasor.” Grobman, 863 So.2d at 1236. Derivative liability is that which “depends upon a subsequent wrongful act or omission by another.” Id. (quoting William D. Underwood & Michael D. Morrison, Apportioning Responsibility in Cases Involving Claims of Vicarious, Derivative, or Statutory Liability for Harm Directly Caused by the Conduct of Another, 55 Baylor L.Rev. 617, 642 (2003)).
The question is therefore whether the Eagles’ liability here .was derivative. Examining section 768.125, Florida Statutes, we see that the legislature explicitly intended to protect providers from liability except in cases where the provider serves an underage person or a known habitual alcoholic and “the intoxication of such ... person” “cause[s] or result[s]” in “injury or damage.” § 768.125, Fla. Stat. The negligence of a provider results in liability only when there is a “subsequent wrongful act or omission” by the person who is intoxi *342 cated. Liability in this case was therefore derivative.
Based on Grobman, we hold that the trial court did not err in excluding Felt from the verdict form. “[T]he risk of [Felt’s] tortious ... conduct is the very risk that made the [Eagles’] conduct negligent in the first place,” Grobman, 863 So.2d at 1236 (quoting Underwood & Morrison, supra, at 646), and his foreseeable conduct therefore cannot be used to reduce the Eagles’ responsibility.
E. Evidence of the Eagles’ Charitable Work
On cross-appeal, the Wildes argue that the trial court erred in allowing evidence of the Eagles’ propensity for charity. We review this issue for abuse of discretion, where discretion is limited by the rules of evidence. Seymour, 187 So.3d at 358.
“The character of a civil ... litigant is not ordinarily in issue and evidence concerning it is not ordinarily admissible _” La Reina Pharmacy, Inc. v. Lopez, 453 So.2d 882, 882 n. 3 (Fla. 3d DCA 1984). Evidence of the Eagles’ charity work went to its character and was therefore irrelevant and should have, in the abstract, been excluded.
However, the Wildes here opened the door to evidence of the Eagles’ character for charitability when they introduced their own evidence of the Eagles’ character for un charitability — that the Eagles was not engaged in the charity work it once was and had turned into a drinking club. See Rodriguez v. State, 753 So.2d 29, 42 (Fla.2000) (“As an evidentiary principle, the concept of ‘opening the door’ allows the admission of otherwise inadmissible testimony to ‘qualify, explain, or limit’ testimony or evidence previously admitted.” (quoting Tompkins v. State, 502 So.2d 415, 419 (Fla.1986))).
We therefore find no error with the Eagles’ introduction of counter-evidence on this point. We stress, though, that at the new trial, neither party should be permitted to introduce evidence of the Eagles’ charitable or uncharitable nature.

Conclusion

A new trial is required in this case. The trial court erred by allowing evidence of the RVA to be admitted when the RVA neither formed the basis of a cause of action nor could properly be used as evidence of negligence. We hold that evidence of the Eagles being on notice of the RVA was inappropriate under section 90.403 due to the high probability of confusing the issues and low measure (if any) of relevancy. Similarly, evidence of the prior lawsuit should not have been admitted.
Additionally, we are troubled by many of the comments made by the Appellees during closing arguments, and caution against their recurrence in a future trial. Furthermore, although the evidence of the Eagles’ charitable work was properly admitted because of the Appellees’ opening of the door, we hold that such evidence was improper on both sides and should not be admitted in the new trial.
Finally, we hold that the non-inclusion of Felt on the verdict form was appropriate under Grobman.
For those reasons, we reverse the judgment entered in this case and remand for a new trial consistent with this opinion.

Reversed and remanded.

DAMOORGIAN, J., and PERLMAN, SANDRA, Associate Judge, concur.

. Although we write to address the other issues raised, we offer no comment on whether the trial court abused its discretion in denying remittitur, as our reversal and remand for a new trial makes this issue moot.

. We note that several of the allegedly improper statements the Eagles raise on appeal that were not properly objected to below (or the .objection was not properly preserved) would likely have been found to be sufficiently inflammatory to warrant reversal. Those statements commented on “the man the Eagles killed” (referring to the prior lawsuit discussed above); called on the jury to "hit them where it hurts”; and pleaded with the jury to reach the proper decision "so there's not some other child, so there's not some other brain damaged gentleman.” But because objections to these comments were not sufficiently preserved, we do not hold that they require reversal in this appeal.